## J. R. KIRKLAND & Co. *v.* FREDERICK CARR.

1. WITNESS: COMPETENCY OF: NATURE OF INTEREST WHICH DISQUALIFIES.—A person who would be liable to the plaintiff in case he fails to recover, but against whom the defendant would have no recourse, if a recovery was had, is interested for the plaintiff, and therefore not a competent witness for him. And, hence, where the defendant shipped the cotton of a planter to a commission merchant in New Orleans, who sold it, and applied the proceeds to the credit of the defendant, on a debt due by him to the factor, the latter is an incompetent witness for the planter, to establish his demand against the defendant for the proceeds of the cotton.

2. CONTRACT: WHEN TERMINATED BY NOTICE.—An agreement between a country merchant and a cotton-factor, that cotton shipped by the former, but belonging to planters, should be sold by the latter and the proceeds credited to the shipper, who was to settle with the owner; if not limited expressly to a specified time, is temporary in its nature, and will be terminated by a notice from the country merchant to the factor, to sell the cotton of planters thus shipped, and account to them for the proceeds.

3. CONTRACT: PARTY NOT BOUND BY, UNLESS HE ASSENTED TO IT.—The correspondent of a cotton-factor, through whom shipments of cotton belonging to planters have been made for sale on the planters' account, is not responsible to the planters for the proceeds of such sales, merely because the cotton-factor applies them to the credit of the correspondent on a debt due by him to the factor, unless it also appear that the correspondent authorized such application in the first instance, or subsequently ratified it.

4. NEW TRIAL: WHEN A SECOND NEW TRIAL GRANTED.—When a material part of the evidence to sustain the verdict is illegal and incompetent, this court

will grant a new trial, although a new trial had been previously granted to the same party.

ERROR to the Circuit Court of Rankin county. Hon. John Watts, judge.

This was an action by F. Carr, a planter, to recover of Kirkland & Co. the proceeds of thirty-five bales of cotton, shipped by Kirkland & Co. to Lowe, Pattison & Co., of New Orleans.

The substance of the pleadings is set out in the opinion of the court. On the trial, which took place in October, 1856, the plaintiff offered in evidence the depositions of W. H. Pattison and B. M. Lowe, members of the firm of L., P. & Co. These depositions were objected to, on the ground that the witnesses were interested on the side of the plaintiff but the objection was overruled, and the defendants excepted.

W. H. Pattison proved, that, in the fall of 1851, L., P. & Co. received thirty-five bales of cotton through the defendants, marked " F. Carr," and that the same were sold, and the proceeds applied to the credit of Kirkland & Co., who were then and are still largely indebted to L., P. & Co. Witness further stated that his understanding of the agreement between Kirkland & Co. and Lowe, Pattison & Co., in reference to the application of the proceeds of the sales of cotton (whether belonging to K. & Co. or planters) shipped by K. & Co. to L., P. & Co., is stated in the postscript to a letter written by witness to A. G. Mayers, Esq., one of the attorneys for plaintiff; which said postscript is as follows :—

" P.S. I can state that Mr. Kirkland's agreement with L., P. & Co. (by me) was positively, that all cotton (even that of planters) shipped by K. & Co. was to be placed to credit of K. & Co. on the books of L., P. & Co., and that we (L., P. & Co.) were to settle only with K. & Co."

Witness further stated, that, after the store of K. & Co. was burnt, on the 17th January, 1852, they mentioned to him that the cotton in controversy was shipped on account of Carr, and that they must settle with Carr for it; and witness said to them, that he would do so if K. & Co. would pay L., P. & Co. what they owed them.

On cross-examination, witness stated that L., P. & Co. had received four letters written by K. & Co. to them, and dated respectively, "Sept. 4, 1851," "Sept. 25, 1851," "Oct. 15, 1851," and "Oct. 20, 1851."

In the first letter it is stated, that "We sent to the depot to-day five bales of cotton, marked 'F. Carr,' for account and risk of Col. Frederick Carr, of Smith county; he wishes it held up for further orders; insure it against fire." The second advises L., P. & Co. of another shipment of cotton, on account of F. Carr, and for his risk. The third letter states, that "Col. F. Carr does not want his cotton sold unless you can get ten cents for it." The fourth letter advises L., P. & Co. of the shipment of five bales of cotton, marked "W. H. Batt," which they are directed to hold subject to the order of K. & Co., and place the proceeds, when sold, to their credit. In a postscript it is stated, "We also ship five bales of cotton—F. Carr—to hold for account of Col. Fred. Carr, as before advised."

The witness also stated, that Carr had sent an order on L., P. & Co. for the proceeds of the cotton, but they refused to pay it, for the reason that they had been credited to K. & Co.

Lowe's deposition stated nothing in addition to Pattison's.

The deposition of Robert Copeland, clerk and book-keeper of L., P. & Co., was also read. He stated that cotton had been received by his principals, marked "F. Carr," and "that said cotton was considered by L., P. & Co., as in their hands to be sold and accounted for to Kirkland & Co;" and that it was actually so sold and accounted for, by giving credit to K. & Co. for the proceeds.

The accounts of sales of plaintiff's cotton rendered by L., P. & Co. to K. & Co., were also introduced in evidence. From these it appeared that thirty bales were sold on 26th December, 1851, at $7\frac{5}{8}$ cents per pound, net proceeds, $954; that five bales were sold on 24th December, 1851, at $7\frac{1}{4}$ cents per pound, net proceeds, $150.63.

Plaintiff then proved, by the clerk at the railroad depot, that, in the fall of 1851, the defendants shipped thirty-five bales of cotton, marked F. Carr, in their name, agreeably to the written order then produced by the witness, and in the words and figures following:—

"We send you five bales of cotton, marked F. Carr, Nos. 25 to

30, inclusive, to be shipped to J. Boland & Co., Vicksburg. Oct. 7th, 1851."

Alexander Chisholm, for the plaintiff, proved, that, in the winter of 1852, he called on K. & Co., at the request of Carr, to ascertain from them what had become of Carr's cotton; "that defendants informed him said cotton had been sold, contrary to the instructions of plaintiff." In the summer of 1852, the witness had another conversation with Kirkland, one of the defendants, and was then informed by K. that he (K.) was willing to pay Carr what the cotton sold for, but that Carr was not willing to take it, and demanded ten cents per pound.

The defendant then read the deposition of I. Boland, who proved, that in the fall of 1851, he was a commission and forwarding merchant at Vicksburg, and as such, received by railroad, from K. & Co., thirty-five bales of cotton, marked F. Carr, with directions to ship the same to L., P. & Co., on account of said Carr. Witness made the shipments as directed, and thought he wrote to L., P. & Co., when he made the first shipment, that the cotton was for the account of Carr; and he also stated, that "in the other shipments, for whose account the cotton was shipped, was placed in the face of the bills of lading," which were sent to L., P. &. Co.

The defendants then proved that the firm of Kirkland & Co. was dissolved about 1st February, 1852. This was all the evidence.

It is only necessary to set out the first and fifth instructions given at the instance of plaintiff, as no opinion is expressed by the court in the others.

The first instruction for plaintiff is as follows:—

" If the jury believe from the testimony, that defendants agreed with Lowe, Pattison & Co., to ship them cotton, as well the cotton of planters, as their own, and that L., P. & Co. were to settle with defendants, who were to settle with the planters, this contract was binding on the defendants, and they could not avoid it by a letter of instruction, without the consent of Lowe, Pattison & Co."

The fifth instruction is as follows:—

" If the jury believe from the evidence, that Kirkland & Co., received the cotton of Carr, merely as his (Carr's) agent to sell the same for him, and that Kirkland & Co. have sold the same and received the proceeds of said cotton, either in cash, or by way of credit upon a debt due by them, then they must find for plaintiff."

The jury found a verdict for the plaintiff, for $1382. The defendants moved for a new trial, which was refused, and they excepted and sued out this writ of error.

*George L. Potter*, for plaintiffs in error.

*John D. Freeman*, for defendant in error.

SMITH, C. J., delivered the opinion of the court.

This was an action, brought by the defendant in error, in the Circuit Court of Rankin, to recover from the plaintiffs in error, the proceeds of thirty-five bales of cotton.

The material allegations of the complaint are in effect, that in January, 1852, the plaintiff delivered to the defendants, thirty-five bales of cotton, which, by agreement, the defendants were to ship, and have sold in the city of New Orleans, for and on account of the plaintiff. That the cotton was accordingly shipped, and consigned to Messrs. Lowe, Pattison & Co., of said city, by whom it was sold, on account of the defendants, to whom the amount of sales were sent, and to whose credit the proceeds were, by said Lowe, Pattison & Co., applied; and that the defendants have failed and refused to pay over to plaintiff the proceeds of said cotton.

The answer contained a general denial of the allegations of the complaint. And a verdict, the second rendered in the cause, for the plaintiff, was found by the jury. Whereupon, a motion for a new trial was made, which was overruled, and exceptions taken.

The questions raised by the exceptions to the judgment, and which we deem it material to notice, are : 1. Whether the court did not err in refusing to exclude the depositions of Lowe and Pattison, upon the ground that they were incompetent witnesses. 2. Whether there was not error in granting the first and fifth instructions for the plaintiff, and the refusal to give the sixth instruction requested by the defendants. And 3. Whether defendants' motion for a new trial was not improperly overruled.

1. Lowe and Pattison, whose depositions were objected to, were members of the firm of Lowe, Pattison & Co., to whom the cotton was shipped by Kirkland & Co., and by whom it was sold, and the proceeds paid over or credited to them. Kirkland & Co., at the

time of the transaction, were largely the debtors of Lowe, Pattison & Co. The disposition made, therefore, of the proceeds of the cotton, was in fact, a payment of so much of the debt, due by the former, to the latter. It is clear, that in the event of a recovery by the plaintiff, the defendants, Kirkland & Company, would have no resource upon Lowe, Pattison & Co.

The evidence goes very strongly, if not conclusively, to show that Lowe, Pattison & Co., were liable to the plaintiff. It is, hence, evident, that they had a direct interest in securing a recovery against the defendants. Upon a very plain principle of evidence, Lowe & Pattison were both incompetent witnesses, and their depositions should have been ruled out.

2. The first instruction given for the plaintiff, is in these words: " If the jury believe from the testimony, that defendants agreed with Lowe, Pattison & Co., to ship them cotton, as well the cotton of planters as their own, and that Lowe, Pattison & Co., were to settle with defendants, and defendants were to settle with the planters, this contract was binding on defendants, and they could not avoid it, by a letter of instructions, without the consent of Lowe, Pattison & Co."

This instruction was erroneous and improper, and might have misled the jury. It was improper, because the evidence in the cause, established no agreement between Kirkland & Co., and Lowe, Pattison & Co., of a permanent, or so binding a character, that neither party could put an end to it, by notice to the other. And it was erroneous, for the reason, that the agreement stated in the instruction, in legal effect, amounted to nothing more than an understanding of the method in which the transactions between them, in regard to the shipment and sales of cotton, should be conducted, not limited to any specified time, necessarily temporary in its nature, and which either party would have a right to put an end to.

The fifth instruction for plaintiff was also erroneous. It was not strictly warranted by the facts in proof before the jury, as it was not pretended that the defendants sold the cotton, or had actually received the proceeds; and it lays down an improper rule for the government of the jury.

If the defendants had received the proceeds of the cotton; or if they had been applied by Lowe, Pattison & Co., to the payment of

the debt due by the former, with their consent; or if they were so applied without their consent, and the defendants afterwards assented to the appropriation, and received the benefit of the credit, it does not admit of doubt that they were liable to plaintiff.    But, under the rule applied by the instruction, the jury were required to find for plaintiff, if it were proved that credit was given to the defendants, by Lowe, Pattison & Co., for the amount of the proceeds of the cotton, although that was done without the previous knowledge or consent of the defendants, and there was no evidence that they had afterwards approved of it.    This was clearly erroneous.

3. The views, expressed upon the questions above considered, render it unnecessary for us to go into a minute examination of the evidence, for the purpose of ascertaining whether the verdict was correct or incorrect.    It is sufficient to state, generally, that the verdict was fully justified upon the whole of the evidence submitted to the jury.

But the testimony of Lowe and Pattison, which, in our opinion was illegally admitted, constitutes a material part of that evidence. Without their testimony, the verdict, at best, would be of questionable propriety.    We are compelled, therefore,—although this is the second verdict rendered in the cause for the plaintiff,—to reverse the judgment, for the errors pointed out, and award a new trial.