MATHIAS, RESPONDENT, *v.* THE WHITE SULPHUR
SPRINGS ASSOCIATION, APPELLANT.

19   359
24   264

[Submitted April 5, 1897.  Decided April 12, 1897.]

### *Corporation—Authority of President.*

CORPORATIONS—*Authority of President.*—The president of a corporation organized to
  acquire townsites and erect buildings, has no implied authority to act as its manag-
  ing agent and bind the company by a contract with an architect for building plans.
SAME.—In this case, the evidence did not show that the president was in the active con-
  duct and management of the business of the company, or that he had full control of
  its business, or was its principal stockholder, or that he had express authority to con-
  tract for the plans or buildings to be erected by the company without the sanction of
  the board of directors, or that he had general authority to act for the board, or that
  it was his custom to exercise publicly such powers, or that the company led the pub-
  lic to believe that he had such powers or knew of the contract sued upon; and it was
  *held* that the mere fact that the president had had repairs done by plaintiff to a build-
  ing belonging to the company, was not sufficient to justify a finding that he had
  power to bind the company by the contract sued upon.

*Appeal from District Court, Lewis and Clarke County.  H.
N. Blake, Judge.*

ACTION by T. F. Mathias against the White Sulphur Springs
Association.  From a judgment for plaintiff, and from an
order denying a motion for new trial, defendant appeals.  Re-
versed.

Statement of the case by the justice delivering the opinion.

The plaintiff (respondent herein) brought this action against
the defendant and appellant corporation for services alleged to
have been performed by him, as an architect, in drawing plans
for a building for the defendant.  The defendant denied any
indebtedness.  The case was tried to a jury, and judgment
rendered against the corporation for $280.31.  The corpora-
tion appeals from the judgment and the order denying a mo-
tion for a new trial.

*N. W. McConnell, John B. Clayberg* and *M. S. Gunn*, for
Appellants.

The general rule is that the president cannot act and contract for the corporation any more than any other director. (Cook on Stockholders, § 716; *Wait* v. *Nashua Etc. Ass'n,* 23 Atl. 77; *Street Railway Co.* v. *Bank,* 34 S. W. 89; *Turnpike Co.* v. *Looney,* 71 Am. Dec. 491; *Mill Co.* v. *Lyndon L., B. & I.,* 25 Am. St. Rep. 783; Vol. 1 Morawetz on Corporations, § 537.)

*F. H. McIntire,* for Respondent.

The acts of the president of a corporation, done in the management of the business of a corporation, and within the scope and ordinary course of its business, are the acts of the corporation itself. (Thompson on Corporations, Vol. 4, § 4613, note 1 and authorities cited; Beach on Corporations, Vol. 1, § 203; Boone on Corporations, § 144, note 2; Morawetz on Corporations, Vol. 1, § 538; *Sparks* v. *Dispatch Etc. Co.,* 104 Mo. 539, and authorities cited; *Sherman Center Etc. Co.* v. *Swigart,* 43 Kan. 282.) Citing also, Lawson's Rights and Remedies, Vol. 1, § 57; Abbott's Trial Evidence, page 41; Thompson on Corporations, Vol. 4, § 4881 and § 5250, *Id.,* §§ 4661–4882.

Hunt, J.—The principal error assigned, and the only one which we need consider, presents the question whether the evidence is sufficient to support the verdict. We will assume that the proof showed that plaintiff prepared the plans for the corporation, and that they were worth the sum charged; but the defense of the company was that there was no evidence that Aaron Hershfield, the president of the corporation, had any authority to contract for the making or furnishing of the plans or for the performance of the services specified in the complaint, or to incur any indebtedness against the defendant on account thereof. The plaintiff himself testified: That in 1892 he did some work, as an architect, for Mr. Hershfield, in the matter of improving or remodeling the White Sulphur Springs Hotel, at White Sulphur Springs, Mont. ; that in August or September of that year he drew the plans, the

value of which is sued on, for a business block; that these plans were made for the defendant corporation; that Mr. Hershfield (the president of the corporation) and plaintiff together examined a certain lot at White Sulphur Springs, and that Hershfield told him what the size of the building was to be, and for what purpose it was to be used; that it was to be put on the property of the defendant corporation at White Sulphur Springs; that plaintiff thereafter gave to Hershfield a description of the plans, and subsequently sent his bill for the services to Hershfield, at Helena, demanding payment; that the plans were delivered to Hershfield, who requested that a few changes be made; that this was done, and, when plaintiff went to deliver the plans again to Hershfield, Hershfield was absent, and that, when spoken to afterwards by plaintiff, he told him to keep the plans for the present; that he did not know whether he would build that year or not; and that that was why the plaintiff happened to have the plans himself on the trial, but that they were presented to Hershfield and accepted. This was all the testimony introduced on the trial in behalf of plaintiff relating to the contract with the defendant corporation.

The defendant moved for a nonsuit on the ground, among others, that no authority had been shown from the corporation to Hershfield to contract for drawing the plans. The court overruled the motion for a nonsuit, and, the defendant declining to introduce any testimony, the court instructed the jury, that, if they were satisfied that the plaintiff performed the services described in the complaint at the request of any officer of the defendant, and that officer was acting within the scope of his authority and in the ordinary course of business of the defendant, then plaintiff could recover. But when we analyze the facts testified to by the plaintiff, and apply to them the rules of law bearing upon the liability of a corporation for the acts of its president, we are forced to the conclusion that the district court erred in overruling the defendant's motion for a nonsuit, and in charging the jury as it did. While we are not disposed to adhere too strictly to the view taken by

many learned writers, and stated by Thompson (Thompson on Corporations, § 4619), to be that the president of a corporation has no implied authority, by virtue of his office, to act as agent of the corporation, but must derive his power by delegation of the board of directors; and hence that, wherever his power to bind the corporation is challenged, a delegation of power from the board of directors, either in express terms, or such as may be implied from the habit of acting with their apparent consent, must be shown, yet we shall be careful not to go too far towards the opposing theory, by presuming that one of the implied powers of the office of president of a corporation organized to acquire title to a townsite and buy lands and build buildings, is to act as its managing agent in entering into a contract with an architect to draw plans for an expensive new building for the company.     Doubtless, where the president of a corporation makes a contract within the ordinary scope of the business of the corporation, unless notice to the contrary be given, a person dealing with the president may proceed upon the assumption that the president has authority, as the agent of the corporation to bind it.   (*Ceeder* v. *Lumber Co.*, 86 Mich. 541, 49 N. W. 575.)   This appears to be the rule in New York, as laid down in *Bank* v. *Kohner*, 85 N. Y. 189; Cook on Stock, Stockh. Corp. Law, § 716.

But the agreement must in some way appear to have been within the scope of the president's authority,—that is, that the act done by the president pertains to the ordinary business of the company,—before, even under most liberal rules, any presumption can arise that the act is legally done and is binding upon the corporation.   (*Sparks* v. *Transfer Co.*, 104 Mo. 531, 15 S. W. 417; *Smith* v. *Smith*, 62 Ill. 493; Taylor on Priv. Corp., §§ 237, 238.)   But in the case before us the circumstances do not show that Hershfield was in the active conduct and management of the business of the defendant corporation, as in the case of *Ceeder* v. *Lumber Co.*, *supra*, or that he had full control of its business, or was the principal stockholder in the company, as in *Crowley* v. *Mining Co.*, 55 Cal. 273; or that, as president, Hershfield had express au-

thority to contract for plans or new buildings to be erected without first obtaining the sanction of the board of directors, as in *Siebe* v. *Machine Works,* 86 Cal. 390, 25 Pac. 14; or that he had general authority to act for the board of trustees; or that it was the president's custom to exercise like powers in the face of the public; or that the company held him out to the public as possessing the power to order plans for new buildings or to contract for the same; or that the corporation, or any director thereof, ever knew of, or received and retained, the plans, or in any manner at all availed itself of the plaintiff's work, or ratified the president's act. The mere circumstance that once before the president had had some repairs or remodeling done by plaintiff upon a building belonging to the company, is not enough to warrant the presumption that he had the power to enter upon this contract. Needed repairs of a building, already built and belonging to the company, may very appropriately be deemed within the ordinary scope of the business of the corporation, pertaining to the best preservation of its property; but the right of contracting for plans for a valuable new building is a step in the acquisition of new property, which is an entirely different matter, and one upon which the board could alone ordinarily act, unless it delegated the power to do so to some one else. *Wait* v. *Association* (N. H.) 14 S. L. A. 356, 23 Atl. 77, and *Wilson Sewing Machine Co.* v. *Boyington,* 73 Ill. 534, were both suits to recover for services, as architects, in drawing plans. In each case the defense was a lack of authority in the president to bind the corporations defendant. The supreme court of New Hampshire held to the strict doctrine, referred to above, that no such authority was incident to the office of president; while the supreme court of Illinois adopted a somewhat contrary, and more liberal, view. But a careful examination of the facts in the Illinois case discloses that it appeared on the trial that the president was the executive manager of the corporation, and principal stockholder thereof, and that he, together with another man, also a manager and superintendent, they ordered the plans for the

defendant corporation.    But plaintiff in this case cannot rely upon the Illinois decision, because his evidence falls far short of what enabled plaintiff there to recover.    For error in over-ruling the motion for a nonsuit, the judgment is reversed and the cause remanded, with directions to grant a new trial.

*Reversed and Remanded.*

PEMBERTON, C. J., and BUCK, J., concur.

[Submitted April 5, 1897.   Decided April 12, 1897.]