## McCullough-Dalzell Crucible Company, Appellant, *v.* Philadelphia Company.

*Corporations—Natural gas companies—Contract—Rates—Termination of contract—Notice—Change of position.*

Where a natural gas company contracts in consideration of a right of way conveyed absolutely, to furnish gas to the grantor at a certain rate, and the duration of the contract is left indefinite, and years after the contract is made conditions change, so that the gas company, in order to cover the increased cost of producing gas, is compelled to increase its rates to other consumers, the company may terminate the contract upon a reasonable notice.

Argued Nov. 3, 1908. Appeal, No. 160, Oct. T., 1908, by plaintiff, from decree of C. P. No. 2, Allegheny Co., July T., 1907, No. 281, dismissing bill in equity in case of McCullough-Dalzell Crucible Company v. Philadephia Company. Before FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an injunction.

MILLER, J., specially presiding, filed the following opinion:

The bill alleges, that the plaintiff granted the defendant the right to lay and maintain pipe lines in the bed of Thirty-sixth street and Spruce alley in the city of Pittsburg, title to which the plaintiff claims; in consideration for which the defendant had agreed to furnish gas as fuel to the plaintiff's crucible works free of cost for one year, and thereafter at a rate equal to one-half the cost previously paid for coal, coke and other fuel; that the defendant company now proposes to terminate said contract, to remove the pipe lines remaining and to discontinue service, except upon a new contract based on the present market price; the bill prayed for an injunction and for the specific performance of the contract.

The answer admits the contract, but asserts, first, that it, being without time limit, is revocable upon reasonable notice by either of the parties; second, that the contract itself contains

a right of termination; third, that the present condition respecting the cost and supply of gas, was not within the contemplation of the parties when the contract was made; that ·the present price is inequitably low, less than the cost of production, and far less than that paid by other consumers of the same character.

### FINDINGS OF FACT.

1. The plaintiff is a corporation under the laws of Pennsylvania, engaged in the manufacture of crucibles, and other articles containing plumbago; it is the successor of a partnership formerly doing business under the name of McCullough, Dalzell & Company. It is now the owner of a manufacturing plant in the fifteenth ward of the city of Pittsburg, bounded by Thirty-sixth street on the east and by the Allegheny Valley Railroad on the south.

2. Prior to March 13, 1886, Michael McCullough, Jr., a then member of the partnership of McCullough, Dalzell & Company, was the owner of a piece of ground adjoining that described in the first finding of fact, fronting on said Thirty-sixth street, bounded by, and extending across, Spruce alley and said Allegheny Valley Railroad. Said alley had never been an open street, and was owned in fee by said Michael McCullough, Jr., who, with the other members of said partnership, were the then owners in fee of the lot of ground described in the first finding of fact.

3. The Philadelphia Company, defendant, is a corporation under the laws of Pennsylvania and is engaged now and prior to 1885 in the production, transportation and sale of natural gas in the city of Pittsburg and elsewhere.

4. On March 13, 1886, Michael McCullough, of the first part, McCullough, Dalzell & Company, of the second part, and the Philadephia Company, of the third part, entered into the following agreement:

"Whereas, M. McCullough, Jr., is the owner of a certain lot or piece of ground situate in the 15th ward of the City of Pittsburg, fronting on 36th street, and bounded by Spruce alley and the Allegheny Valley R. R.;

"And Whereas, Michael McCullough, Jr., John H. Dalzell,

C. C. Arensberg and H. E. Dubarry, partners doing business as McCullough, Dalzell & Company, are the owners of a certain lot or piece of ground situate in the said ward, bounded by the Allegheny Valley R. R., on the south and the Allegheny river on the north, and running from 35th to 36th street;

"And Whereas, The Philadelphia Company has already laid its pipe line in the bed of that portion of 36th street which is the property of the said McCullough, and McCullough, Dalzell & Company, and also in Spruce alley upon the property of said M. McCullough, Jr., and is desirous of having its rights to maintain and operate its said pipe line confirmed;

"Now, This Agreement, made this 13th day of March, 1886, between the said M. McCullough, Jr., party of the first part, Michael McCullough, Jr., John H. Dalzell, C. C. Arensberg and H. E. Dubarry, partners doing business as McCullough, Dalzell & Company, parties of the second part, and the Philadelphia Company, party of the third part, witnesseth as follows:

"Said party of the first part, and said parties of the second part in consideration of the sum of one dollar to them in hand paid by the Philadelph̓ a Company, receipt of which is hereby acknowledged, and in further consideration of the agreements hereinafter mentioned to be kept and performed by the said Philadelphia Company, hereby grant and convey unto the said Philadelphia Company, its successors and assigns, the right to maintain and operate and from time to time repair, its pipe line for the conveyance of natural gas, extending from the Allegheny river southward in the bed of 36th street to Spruce alley and through Spruce alley; to have and to hold said right and privilege to the said Philadelphia Company, its successors and assigns forever.

"In consideration of the premises, the Philadelphia Company hereby agrees to furnish to the said McCullough, Dalzell & Company or their successors or grantees occupying same ground gas for fuel at their crucible works, of present size and capacity, situate on said property, according to the terms and conditions of the contract in ordinary use by said Philadelphia Company with its customers, but without cost, for one year from the first day of May, 1885 (five), and thereafter at a rate which shall

equal one-half the cost to said McCullough, Dalzell & Company of the coal, coke and other fuel by them used prior to the introduction of natural gas [during the two (2) years previous to the introduction of gas]."

To the foregoing agreement and made part thereof was attached a blank form of agreement then in use between the Philadelphia Company and its consumers, which agreement in full is found in the plaintiff's bill.

Among the provisions of said printed form of agreement, are the following: (*a*) That the consumer should provide and make all connections and appliances for the purpose of utilizing natural gas from the mains of the Philadelphia Company; (*b*) that it would exercise all due care so as to prevent any waste in the use of gas; (*c*) that, if it violated said provisions and any of the others contained in the agreement, the supply might be cut off on five days' notice.

Among the mutual covenants in said agreement are the following: (*a*) That if the company's supply of gas should fail, whether from natural causes or otherwise, its obligations under the agreement should cease and determine, and (*b*) "This agreement shall continue in force after the expiration of the term named until either party gives ——— days' notice of the desire to terminate the same, at the expiration of which time the agreement shall cease."

5. On April 9, 1886, Michael McCullough, Jr., party to the agreement set forth in the fourth finding of fact, executed and delivered an assignment of it to said McCullough, Dalzell & Company.

6. In pursuance of the foregoing contracts and assignment, the plaintiff company at a considerable expense equipped and fitted out its plant for the use of natural gas, and the defendant company continued to furnish gas to the plaintiff in accordance with said contracts and assignment, from May 1, 1885, until March 15, 1907, when it served the following notice upon the plaintiff company:

"Whereas, by an agreement dated March 13th, 1886, between M. McCullough, Jr., Michael McCullough, John H. Dalzell, C. C. Arensberg, H. E. Dubarry and the Philadelphia Com-

pany, there was granted to the said Philadelphia Company, a right of way over which to maintain and operate a pipe line for the conveyance of natural gas, extending from the Allegheny river southward in the bed of 36th street to Spruce alley, and through Spruce alley, and in consideration therefor the Philadelphia Company agreed to furnish to the said McCullough, Dalzell & Company, or their successors, gas for fuel at their crucible works, without cost, for one year from the first day of May, 1885, and thereafter at a rate which shall equal one-half the cost to said McCullough, Dalzell & Company of the coal, coke and other fuel by them used prior to the introduction of natural gas (during the two years previous to the introduction of gas); and

"Whereas, it is the intention of the said Philadelphia Company to abandon said right of way and to reclaim therefrom as much pipe as it is practicable for it to reclaim, and to be thereupon released from its obligation to furnish gas at the above mentioned rate.

"Therefore, Notice is hereby given, that the Philadelphia Company will, on April 30th, 1907, terminate said contract; will permanently abandon and remove said pipe line, and will not thereafter furnish gas to the said McCullough, Dalzell & Company or McCullough-Dalzell Crucible Company, its successors, except at the present market price and under a new contract."

7. The defendant has a sufficient supply of gas to meet plaintiff's needs, which supply, however, comes from fields and wells and under circumstances almost wholly different from those in operation and used at the time the contract was made, and which will be fully set forth in another finding of fact. The defendant can supply the plaintiff's needs from its mains located in the public streets, without using any of the lands or easements formerly belonging to Michael McCullough, Jr., or to the plaintiff's predecessor in title.

8. When said contract was executed, defendant's supply of gas was obtained from wells in and near the vicinity of Pittsburg, the gas being driven by natural pressure. At present about 80,000 cubit feet of gas per day comes from the wells

or territory in use when the contract was executed. The defendant's main supply is now obtained from wells at a great distance from the city of Pittsburg, driven to far greater depth, and the greater portion of the gas must be pumped from the supply wells through its mains to the points of distribution. The cost of production is now a fraction over nine cents per thousand cubit feet. The price received from the plaintiff company under the contract is a fraction over one cent and five mills per thousand cubit feet. The defendant's regular charge to like consumers at present is twenty-five cents per thousand for the first 150,000 cubit feet, fifteen cents per thousand for the next 150,000 feet and eleven cents per thousand for all in excess of that. The plaintiff company from the time of the contract to 1893 paid the defendant $114 or $117 per month, and since that time it has paid $50.00 per month. From a meter installed by the defendant, it appears that between May 4, 1907, and December 31, 1906, a period of about eight months, the plaintiff company consumed 24,072,400 cubit feet of gas, or an average of over 3,000,000 cubit feet per month, which at the ordinary charge to like consumers would average over $350 per month. Its daily consumption is over 100,000 feet and exceeds the daily production of all the wells and territory when the contract was made.

CONCLUSIONS OF LAW.

1. The written contract, exhibit "A," exclusive of the form of printed contract attached thereto, being unlimited as to time, is revocable by either of the parties upon reasonable notice.

2. The printed form of contract made part of exhibit "A," containing the terms and conditions not expressed in the written portion of the contract, provides for the termination of the contract by either party on reasonable notice.

3. The conditions relative to the cost and supply of gas now existing, were not within the contemplation of the parties when the contract was made. If at the time the contract was made the parties had not in contemplation the addition of new territory and additional wells to supply the demand, the contract is terminable by reason of the failure of the then supply.

4. If at the time the contract was made the parties had in contemplation the exhaustion of the then gas supply and the necessity of increased expenditures to obtain a new supply, then the contract was a discrimination as against other consumers of a like character, and is void on the grounds of public policy.

5. The defendant, having tendered a reconveyance of the easement granted to it and given notice of its intention to terminate the contract, under the facts and foregoing conclusions, should not be held in equity to a continued further performance of said contract.

6. The bill should be dismissed at the cost of the plaintiff.

### OPINION.

It is clear from the opinion of the late President Judge EWING of this court in Crescent Steel Company v. Equitable Gas Company, 40 P. L. J. 316, that whatever else may not have been in the contract of April 2, 1889, the supply of gas for an indefinite period was therein, and in its continuation by the contract of November 1, 1889. Having this in mind, he states that either party might terminate the arrangement on giving a reasonable notice of its intention so to do.

The general principle that contracts without time limit are terminable on reasonable notice by either of the parties, is sustained in Coffin v. Landis, 46 Pa. 426, where the question at issue was, whether such revocation constituted a breach. The conceded right of a principal to revoke an agent's authority was only incidential to the main question. There certainly is no question of agency in the case of Philadelphia & Reading Railroad Company v. River Front Railroad Company, 168 Pa. 357, where it is specifically held that the contract was not irrevocable by either party upon suitable notice, after a date named. So in Cumberland Valley Railroad Company v. Gettysburg & Harrisburg Railway Company, 177 Pa. 519; and in Kenderdine Hydro-Carbon Fuel Company v. Plumb, 182 Pa. 463, the court, after stating the facts, concludes " if either party desired to terminate it, if this could not be done by agreement, it was his duty to deal fairly by the other party and to give a reason-

able notice of his intention to withdraw from it at a fixed date."

The foregoing principle finds universal application in the decisions of many of the other states, among which are: Marble v. Standard Oil Company, 169 Mass. 553 (48 N. E. Repr. 783); Irish v. Dean, 39 Wis. 662; Savage v. Medical & Surgical Association, 59 Mich. 400. In Echols v. Railroad Company, 52 Miss. 610, a contract to supply cordwood to a railroad company, without fixing a time for its termination, the court said: "Perpetual contracts of this character will not be tolerated by the law, or rather will not be enforced, as imposing an eternal and never-ending burden. An agreement to furnish a particular commodity at a specified price . . . . without specification as to time, will be construed either as terminable at pleasure, or implying that the thing to be done shall be performed within a reasonable time . . . . any other theory is a moral and a practical impossibility and if indulged in by the courts could not be enforced in the ordinary concerns of life," citing a number of authorities, among which are Chitty on Contracts (11th Am. ed.), p. 1062; Story on Contracts, sec. 21.

In Marshall v. Railway Company, 136 U. S. 393 (10 Sup. Ct. Repr. 846), where the city of Marshall gave to the company $300,000 in county bonds and sixty-six acres of land within the city limits in consideration that the company would permanently establish its eastern terminus and maintain therein its main machine shops and car works; it was held that the contract was performed when the company had complied with the provisions thereof for a period of eight years until its interests and the public demand required removal of the subjects of the contract to some other place.

The case of Franklin Tel. Co. v. Harrison, 145 U. S. 459 (12 Sup. Ct. Repr. 900), relied on by the plaintiff, was decided on its own peculiar facts, among which it appears that the defendants had released a prior valuable contract; that they had expended $10,000 to erect a new wire under the new contract; and that plaintiff failed to substantiate its averment that it was excluded from any use of the wire on its lines by the continuous use thereof through the defendants; these facts seeming to

establish an equity in favor of the defendants, are not comparable with those in the case at bar, and therefore have no controlling weight in its determination.

The contract, exhibit "A," as a whole, is revocable on notice by its terms. The printed form contains the "terms and conditions" referred to in the written contract; in consideration of the grant of an easement in the beds of Thirty-sixth street and Spruce alley, the defendant company agreed to furnish gas to the works for nothing during the first year, and thereafter at half the cost of coal and coke, "according to the terms and conditions of the contract in ordinary use by the said Philadelphia Company with its customers." The printed contract contains important and material terms and conditions, without which the written contract was not enforceable. For instance, the plaintiffs were required to make all connections and appliances from the defendant's lines; to exercise due care in preventing waste, agreeing that, if it violated any of the foregoing provisions, or any of the other provisions in said printed form, the supply of gas might be cut off; it contains the important provision that in case the supply of gas failed the contract was at an end, and the final clause that the contract might be terminated upon certain notice; these are there with a purpose, else they would have been stricken out. If the printed contract is not to be considered with the written, why is it part thereof?

It is urged that it is inconceivable that the parties by the written terms of the contract should have provided for a never-ending agreement and at the same time provide for the termination thereof. That does not follow—when the contract was made, much of the consideration had passed—the defendant was on the right way of—the plaintiff receiving free gas—under the conditions then existing, its continuation for a reasonable time controlled. By their act they provided for its termination under changed conditions.

It is contended that defendants having accepted this right of way by deed, cannot be permitted to retain the same and escape the liability to deliver gas at the stipulated price, citing a number of railroad condemnation proceedings as analagous cases: these are all actions of law, where the injury, if any, was ascer-

tainable in damages. If the use of this right of way has damaged the freehold to an extent exceeding the difference between the price they paid and the price charged to other consumers, then it is within plaintiff's right to bring suit for the recovery of such additional loss.

Not only is it said in Crescent Steel Company v. Equitable Gas Company, 40 P. L. J. 316, that the parties might terminate their contract, but the principle is further announced that the contract was in violation of the act of assembly chartering natural gas companies, and void as contrary to public policy, because it was an attempt to prefer certain consumers as against others of a similar class. Conceding that the preferred consumers there, were stockholders and directors of the gas company, why in principle should there be any distinction between them and any other class of preferred consumers, peculiarly benefiting by a contract with a public service corporation, necessarily at the expense of other consumers? This contract must be construed with reference to the conditions existing at the time it was made. If, as contended for by the plaintiff, at the time of its execution all the parties knew or ought to have known that new fields and greatly increased expenses would be incurred for the purpose of the supply of gas, then the contract was discriminatory and is void because the defendant, to remain in business, must charge other consumers more than the cost price of its gas; this advantage to the plaintiffs, against the general public, is wholly unwarranted in law. The day of rebates, preferential discriminations and unequal and unfair charges, to like classes of customers, by public service corporations, is, and should be, drawing to a close.

Again, if the parties had in contemplation only the conditions as they then existed, it is clear that the contract should fail for want of a supply of gas, the evidence being that not enough gas is obtained from all the wells in existence when the contract was made to now supply the plaintiffs' works, if no other consumer was served in the city of Pittsburg or its vicinity. The subject-matter, the supply of gas, being thus exhausted, the contract is terminable by virtue of the terms and conditions relating thereto: Ward v. Vance, 93 Pa. 499.

Finally, the equities of this case are wholly with the defendant company. It is clear that when this contract was made a condition existed vastly different from that now found. The supply of gas seemed overabundant; it came from the immediate vicinity, propelled by its own power. For twenty-two years and more the plaintiffs have had a great profit at the expense of the general consumer, and loss of the company, paying for this fuel now a little over ten per cent of its actual cost. Since 1893, a period of fourteen years, this advantage amounts to more than $65,000; from 1885 to 1893, a period of eight years, it had the same relative advantage. Apparently the consideration of this right of way has been an expensive one. Certainly, in view of the abandonment thereof with the tender of surrender, the plaintiffs have no ground for complaint, especially in view of the fact that the offer is made them to continue their supply on such new contract as may be agreed upon, assuming, of course, that this contract will be fair and on the same terms and conditions of like contracts with a class of consumers.

*Error assigned* was the decree of the court dismissing the bill.

*Thomas Patterson,* of *Patterson, Sterrett & Acheson,* with him *Charles F. C. Arensberg,* for appellant.—The evidence admitted by the court to show the changed conditions prevailing at the present time, and the increased cost, was improperly admitted: Weisenberger v. Harmony.Fire, etc., Ins. Co., 56 Pa. 442; Book v. New Castle Wire Nail Co., 151 Pa. 499; Watsontown Car Mfg. Co. v. Lumber Co., 99 Pa. 605; Jones v. Nat. Gas Co., 146 Pa. 204; Collins v. Mechling, 1 Pa. Superior Ct. 594.

Counsel contend that the contract in this case (even exclusive of the form of printed matter).is not silent as to time but clearly expresses the intentions of the parties in regard to it, and that consequently the cases cited by counsel on the other side, and by the court itself, do not apply: Robson v. Mississippi River Logging Co., 43 Fed. Repr. 364; Western Union Tel. Co. v. Penna. Co., 64 C. C. A. 285; Pittsburg, etc., Ry. Co. v. Reno, 123 Ill. 273 (14 N. E. Repr. 195); Franklin Tel. Co. v. Harrison, 145 U. S. 459 (12 Sup. Ct. Repr. 900); Whiteman v. Fayette Fuel-

Gas Co., 139 Pa. 492; Sewickley Boro. School Dist. v. Gas Co., 154 Pa. 539; Corbet v. Oil City Fuel Supply Co., 5 Pa. Superior Ct. 19; Gray v. Citizens' Gas Co., 206 Pa. 303; s. c., 212 Pa. 473; Crescent Steel Co. v. Gas Co., 40 P. L. J. 316; Park Steel Co. v. Ry. Co., 213 Pa. 322.

*David A. Reed,* of *Reed, Smith, Shaw & Beal,* with him *John Gates, Jr.,* for appellee.—The contract was terminable at will by either party, upon reasonable notice, since its duration was left indefinite: Coffin v. Landis, 46 Pa. 426; Phila. & Reading R. R. Co. v. R. R. Co., 168 Pa. 357; Cumberland Valley R. R. Co. v. Ry. Co., 177 Pa. 519; Fuel Co. v. Plumb, 182 Pa. 463.

The contract expressly provided for its termination at will by either party, at any time after May 1, 1886.

If the parties in making the contract contemplated a supply of gas from the districts in which the Philadelphia company was then operating, the exhaustion of the gas in those districts operates to terminate the contract, because, first, it is the destruction of the subject-matter of the contract without the fault of the parties, and, second, the contract provides for its termination upon failure of the gas company's supply through natural causes: Ward v. Vance, 93 Pa. 499.

If the parties in making the contract contemplated a supply of gas from whatever districts the appellee might thereafter develop, regardless of their distance from Pittsburg, or the expense of bringing gas from them, then the contract was void as against public policy: Dunham v. Presby, 120 Mass. 285; Cardoze v. Swift, 113 Mass. 250; Evans v. Richardson, 3 Merivale, 469; Teoli v. Nardolillo, 23 R. I. 87 (49 Atl. Repr. 489).

PER CURIAM, January 4, 1909:

The decree is affirmed at the cost of the appellant on the findings and opinion of Judge MILLER, specially presiding.