[Civil No. 3179. Filed June 13, 1932.]

[12 Pac. (2d) 288.]

THE DOVER COPPER MINING COMPANY, a Corporation, Appellant, v. R. S. DOENGES, Doing Business Under the Name and Style of "DOENGES BROTHERS," Appellee.

350

Messrs. Moore & Shimmel and Mr. A. R. Lynch, for Appellant.

Messrs. Mathews & Bilby and Mr. H. Earl Rogge, for Appellee.

LOCKWOOD, J.—This is an action by R. S. Doenges, doing business under the name of Doenges Brothers, hereinafter called plaintiff, against the Dover Copper Mining Company, a corporation, hereinafter called defendant, to recover damages for the alleged breach of an oral contract for the hauling by plaintiff of certain ore belonging to defendant.

There were two causes of action set up in the complaint. At the close of the evidence the court instructed a verdict in favor of defendant on the first one, and allowed the case to go to the jury on the second. A verdict was returned in favor of plaintiff in the sum of $11,220, on which judgment was duly rendered, and, after the usual motion for new trial had been overruled, the case was brought before us for review.

A proper consideration of the various assignments of error will require a statement of the facts. These facts, taking the evidence in the strongest light in favor of plaintiff, as we must do under our familiar rule, may be stated as follows: Defendant was the owner of certain mining claims situated near Morenci, Arizona, which it was engaged in developing. It was producing a certain amount of ore suitable for shipment, and plaintiff, learning that it was contemplating contracting the hauling of these ores from its mine to the nearest railroad station, entered into negotiations for doing the work with W. V. Tiscornia, the president and general manager of defendant corporation. After some discussion an oral contract was entered into between plaintiff and defendant

about March 1st, 1929. The contract was reduced to writing in the early part of April, although it bears date as of March 1st, and reads as follows:

> "The Dover Copper Mining Co.
> "Morenci, Arizona.
>
> "3—1—29.

"To Whom It May Concern:

"This agreement made between Doenges Brothers, a trucking company and The Dover Copper Mining Company on this first day of March in the year of 1929.

"For a consideration of $2.60 per ton, the above trucking company agrees to haul all the ore from the mining company's bins at the mine proper to the railroad bins at Clifton, a distance of approximately fourteen miles.

"It is further agreed that the trucking company is to assume all obligations pertaining to the trucking expense such as liabilities, property damage, supplies, parts cost necessary for the upkeep of said trucks, labor and etc., and to at all times save and keep harmless The Dover Copper Mining Company from any expense or liability accrued from the operation of said trucks.

"In witness whereof, the parties hereto have executed these presents the day and year first above written.

> "THE DOVER COPPER MINING COMPANY,
> "By [Signed] W. V. TISCORNIA.
> "DOENGES BROTHERS,
> "By [Signed] R. S. DOENGES."

During the conversations leading up to the execution of the contract, the subject of tonnage guaranty was discussed between plaintiff, Tiscornia, and one Tom Cocks, who was mine superintendent for defendant, but no guaranty was included in the contract. Plaintiff testified that during this discussion he asked Tiscornia as to what authority Cocks had, and Tiscornia "told me Cocks was the man to look to. He is here in charge; that I would have to look to Cocks for everything. He is running this thing."

Tiscornia returned to his residence in the east shortly after the execution of the written contract, and, so far as the record discloses, had nothing more to do with the transaction.

Plaintiff commenced hauling ore in accordance with the terms of the contract above set forth about March 20th. Cocks remained in control at the mine until the month of June, at which time a Mr. Newton Emmons took charge of the property, exercising all the authority previously exercised by Cocks, and in addition drew checks in the name of defendant in payment for hauling ore as aforesaid. Plaintiff had no notice that Emmons was not working for defendant, and assumed at all times that he occupied the same position as Cocks, although as a matter of fact Emmons was manager in charge for the American Metals Company under an option of purchase of the premises. Plaintiff, however, knew nothing of any such option.

During the first part of August plaintiff complained to Emmons that he was not receiving enough ore to keep him busy, and that he would have to have more money because he was behind in his payments on his trucks and could not meet his obligations. Thereupon Emmons gave to plaintiff the following letter:

"August 9, 1929.

"Doenges Brothers, Morenci, Arizona.

"Dear Sirs: In confirmation of our conversation yesterday in regard to hauling ore from our Keating mine to the ore bunkers at Clifton and the hauling of return freight, our understanding is at follows:

"Commencing with August 1st you are to receive the sum of $3.25 per ton on ore hauled and on return freight.

"The ore weights are the 'brute weight' as shown on the samplers certificate supplied us by Critchett and Ferguson of El Paso, Texas.

"The weights for return freight are the weights as supplied us by the Southern Pacific freight bills.

"We expect, as soon as the road work now in progress is completed, and the new compressor plant, now being installed, is in full operation, to have a daily output of shipping-ore amounting to fifty (50) tons. This should be within the next 30 days. In the meantime, as soon as the road is passable for your trucks there is at least 100 tons ready to be hauled, and after that there should be no difficulty in giving you 15 tons daily till the new plant is in full operation, after which the daily output should be increased to the full 50 tons.

"Yours truly,
"THE DOVER COPPER MINING COMPANY,
"By NEWTON W. EMMONS."

Plaintiff from that date was paid by Emmons at the rate of $3.25 per ton until about September 1st when the latter left the property and Cocks returned to resume charge of it. One J. W. Tiscornia, a brother of W. V. Tiscornia, was with Cocks, and they asked plaintiff why he was then getting $3.25 instead of the $2.60 originally agreed upon, to which plaintiff replied that he had been obliged to make the change because not enough tonnage had been furnished to justify him in continuing at $2.60 per ton. There was considerable discussion in regard to the matter between Tiscornia, Cocks, and plaintiff, and it was finally agreed that, if plaintiff would reduce his charges from $3.25 to $2.60 per ton, defendant would guarantee him a minimum tonnage of ten cars of ore in September, twenty cars in October, a car a day in November and December, and beginning with the 1st of January not less than sixty cars per month, and further would pay for two cars which plaintiff had hauled in August at the rate set forth in the Emmons agreement of $3.25 per ton, which payment was duly made.

Plaintiff started hauling under this last contract on September 10th and continued until March 4, 1930, at which time the mine was shut down and he was ordered by Cocks to leave. At this time defendant was short of its guaranteed tonnage by 177 cars, which, according to the figures testified to by plaintiff, caused him to lose a net profit of $15,313.42.

Defendant has presented some eleven assignments of error, which we consider in their logical rather than their numerical order. It is contended that the court erred in overruling the demurrer to plaintiff's complaint. This is based on the theory that it is apparent on the face of the complaint that there was no consideration for the purported oral contract of September 1st, 1929, on which the second cause of action is based. The first cause of action sets up that on the 1st day of March the parties entered into an agreement to haul all the ores produced by defendant for $2.60 per ton, nothing being said as to any guaranty of tonnage, while the second one alleges that on the 1st day of September they entered into an agreement to haul these ores at $2.60 per ton, with a guaranty of a certain tonnage which was not contained in the contract of March 1st, and it is urged that it was necessary to plead some new consideration for the second, or that there was a rescission or abandonment of the first. It is obvious that the first contract differed in its terms from the second in that one contained a guaranty of tonnage while the other did not. Each contract on its face sets up a valid consideration. The court could not assume, in passing upon a demurrer, that the contract first pleaded was still in force, since there was no provision in it as to its duration. If defendant claimed that the second was void for any reason not appearing on its face, the proper method to raise the question was by answer, as it did, and not by demur-

rer. The court properly overruled the demurrer to the second cause of action.

The next question which we consider is the objection that the alleged contract of September 1st was an attempt to vary the terms of a written contract by parol. Defendant urges that this cannot be done. There is no question, of course, the law is well established in this as well as other jurisdictions that the terms of a written contract may not be varied by parol evidence. *Pleasant* v. *Arizona Storage etc. Co.*, 34 Ariz. 68, 267 Pac. 794; *Valentine* v. *Shepherd*, 19 Ariz. 241, 168 Pac. 643; *Merchants & Stock Growers Bank* v. *Marley*, 33 Ariz. 294, 264 Pac. 471. Nor does plaintiff contend otherwise. He insists, however, that the oral contract of September 1st is not a variation or contradiction of the terms of the one of March 1st, but rather an entirely new and independent contract between the parties. Of course, it is unquestioned that parties may set aside a written contract by parol and enter into a new oral contract if they so desire. *Pleasant* v. *Arizona Storage etc. Co., supra.* And we think there is evidence in the record sufficient to sustain a finding by the jury that the alleged contract of September 1st was not a variation of the original one of March 1st, but a new and independent agreement.

The next contention of defendant is that, even assuming the alleged oral agreement of September 1st was a new and independent contract, so that it did not fall within the parol evidence rule, the record shows affirmatively that there was no consideration therefor. We have held in the case of *Pleasant* v. *Arizona Storage & Distributing Co., supra,* as follows: "It is the almost universal rule *that the promise of a person to carry out a subsisting contract with the promisee is no consideration for another contract,* as the party is doing no more than he is

already obliged to do. [Citing cases.] The only thing plaintiff agreed to do in the new contract according to the complaint, was to perform the work described in the written contract. This he was already obligated to do. No consideration being pleaded for the alleged oral contract, it was on its face void, and the first cause of action was bad for that reason, as well as for the one previously stated'' (Italics ours), and have followed this holding in the case of *Miller Cattle Co.* v. *Mattice,* 38 Ariz. 180, 298 Pac. 640. If it be true that plaintiff in the oral contract of September 1st only agreed to do what he was already bound as a matter of law to do, the cases above cited would be decisive of the issue. It will be noted, however, that the written contract of March 1st above set forth provides no time limit during which it shall be in force. The general rule in regard to contracts for personal services, such as the one in the case at bar, where no time limit is provided, is that they are terminable at pleasure by either party, or at most upon reasonable notice. In the case of *Echols* v. *New Orleans, J. & G. N. R. Co.,* 52 Miss. 610, the court says:

"With regard to the theory of perpetual duration little need be said. Perpetual contracts of this character will not be tolerated by the law, or rather, will not be enforced as imposing an eternal and never-ending burden. An agreement to furnish a support or service, or a particular commodity, at a specified price, or to do a certain thing without specification as to time, will be construed either as terminable at pleasure, or as implying that the thing to be done shall be performed within a reasonable time, and the obligation will cease within the same limitation. Any other theory than this would subject incautious persons—a class, it may be remarked, which includes the majority of mankind—into life-long servitudes, and greatly fetter and embarrass the commerce of the world. Indeed, it may be said that any other

theory is a moral and practical impossibility, and if indulged in by the courts, could not be enforced in the ordinary concerns of life. 2 Chit. on Con. (11th Am. Ed.), 1062; *Cocker* v. *Franklin Manufacturing Co.,* 3 Summ. (U. S.) 530 (Fed. Cas. No. 2932); *Atwood* v. *Cobb,* 16 Pick. (Mass.) 227 (26 Am. Dec. 657); *Palmer* v. *Vandenbergh,* 3 Wend. (N. Y.) 193; *McLees* v. *Hale,* 10 Wend. (N. Y.) 426; *Knowlton* v. *Sewall,* 10 Allen (Mass.) 34; *Butler* v. *Smith,* 35 Miss. 457; *Kirkland* v. *Carr,* 35 Miss. 584; Story on Con., § 21.

"When the language of the contract does not indicate any period of termination whatever, it will be held to be terminable either at the pleasure of either party or at such period as the court may decree reasonable."

This case has often been referred to and followed by other courts in cases such as *McCullough-Dalzell Crucible Co.* v. *Philadelphia Co.,* 223 Pa. 336, 72 Atl. 633. See, also, *Louisville & N. R. Co.* v. *Offutt,* 99 Ky. 427, 59 Am. St. Rep. 467, 36 S. W. 181; *Victoria Limestone Co.* v. *Hinton,.* 156 Ky. 674, 161 S. W. 1109; 13 C. J., pp. 604, 605, and notes.

We think the contract of March 1st could be abrogated by either party at pleasure upon reasonable notice, and, while plaintiff does not testify explicitly that he stated in so many words that he intended to abrogate that contract, we think the only reasonable implication from his testimony is that such was his intention when he gave notice, first to Emmons and later to Cocks, that he could not continue hauling for $2.60 per ton with no guaranteed tonnage. Laymen cannot be expected to use the same technical precision in their choice of language that astute counsel do when establishing a legal right, and we think, when the reasonable construction of the evidence is that both parties understood that plaintiff would not continue hauling under the contract of March 1st, it is to be considered as a termination of such contract by

him. That defendant understood plaintiff so to mean is evidenced by the fact that its mine superintendent, Cocks, readily gave the guaranty demanded as a condition precedent to plaintiff's continuing hauling at the old rate per ton. Such being the case, the new agreement to haul at the old price was a sufficient consideration for the alleged oral contract containing a guaranteed tonnage.

The next, and in our opinion the closest, question in the case, is whether or not Cocks had authority to make the alleged oral contract of September 1st on behalf of the defendant. We think the general rule in regard to the authority of an agent to bind a corporation principal is well stated in the case of *Trent* v. *Sherlock*, 24 Mont. 255, 61 Pac. 650, as follows:

"No principle of law is more clearly settled than that an agent to whom is intrusted by a corporation the management of its local affairs, whether such agent be designated as president, general manager, or superintendent, may bind his principal by contracts which are necessary, proper, or usual to be made in the ordinary prosecution of its business. Thomp. Corp. § 4850; *Mining Co.* v. *Fraser*, 2 Colo. App. 14, 29 Pac. 667; *Sparks* v. *Transfer Co.*, 104 Mo. 531, 15 S. W. 417, 12 L. R. A. 714 [24 Am. St. Rep. 351]; *Ceeder* v. *Lumber Co.*, 86 Mich. 541, 49 N. W. 575 [24 Am. St. Rep. 134]; *Stokes* v. *Pottery Co.*, 46 N. J. Law 237; *Academy* v. *Estill*, 77 Ga. 409. The fact that he occupies, by the consent of the board of directors, the position of such an agent, implies, without further proof, the authority to do anything which the corporation itself may do, so long as the act done pertains to the ordinary business of the company. *Mathias* v. *Association*, 19 Mont. 359, 48 Pac. 624; *Ceeder* v. *Lumber Co., supra; Mining Co.* v. *Senter*, 26 Mich. 76; *Marlatt* v. *Cotton-Press Co.*, 10 La. 583 [29 Am. Dec. 468]; *Siebe* v. *Machine Works*, 86 Cal. 391, 25 Pac. 14."

It is not disputed that Cocks was the mining superintendent for defendant and the only person on the ground with apparent authority to act in all matters regarding the handling of the mine, and, indeed, everything but the general bookkeeping and office work. Plaintiff further testified that W. V. Tiscornia, the president and general manager of the defendant, expressly told him that Cocks was in entire charge of the mine, and that he, plaintiff, must look to Cocks for everything since he was in charge there and running things.

We are of the opinion that a mine superintendent who is the highest official in the state of a corporation, and in active charge of a going mine, and who has been held out by the general manager of the company, who resides and spends practically all of his time outside of the state, as having entire charge of the work of developing the mine, has the implied power to bind the corporation in contracts for the hauling of the ore which is extracted from the mine in its regular course of development. *Fisk Min. & Mill Co.* v. *Reed,* 32 Colo. 506, 77 Pac. 240.

The remaining objections go to the admission in evidence of the Emmons letter, above set forth, and to certain instructions given by the court. It is urged that Emmons had no authority to bind the defendant by his attempt to increase the contract price to $3.25 per ton, and that such contract was not pleaded. We think the Emmons letter was admissible as bearing on the question of whether or not plaintiff had terminated the contract of March 1st, especially in view of the fact that defendant had admittedly paid for some of the ore hauled after the Emmons letter was written and before the making of the contract of September 1st, at the rate set forth in such letter.

The last question is as to the correctness of the three following instructions:

(1) "If you believe from the evidence that Tom Cocks was acting for and in behalf of the defendant, Dover Copper Mining Company, as the company's agent in making this contract of September 1, 1929, if you believe from the evidence that such contract was made, then your verdict should be for the plaintiff and against the defendant for the amount you may ascertain under the evidence and the court's instructions."

(2) "If you believe from the evidence that Tom Cocks, prior to September 1, 1929, had been the agent of the defendant company, and that his authority had been revoked, you are instructed that, notwithstanding such revocation and authority, plaintiff had a right to rely upon the continued existence of his authority, unless he, plaintiff, had notice of such revocation of authority."

(3) "You are instructed that if you find for the plaintiff in this case, the plaintiff would be entitled to recover profits, if any, which he would have realized by performing the whole contract; that is the profits, if any, he would have realized if all the cars of ore promised to be furnished for hauling had been furnished."

The objection to the first instruction complained of is that it is a comment on the evidence in that it assumed that Cocks made the contract of September 1st. We have held in the cases of *Gila Water Co.* v. *Gila Land & Cattle Co.,* 28 Ariz. 531, 238 Pac. 336, and *Porris* v. *State,* 30 Ariz. 442, 247 Pac. 1101, that it is not a comment on the evidence for the court to assume the existence of a fact which is established clearly by uncontradicted evidence. It will be noted by the instruction that the assumption that Cocks made the contract of September 1st is expressly made conditional on a finding by the jury that such a contract was actually made by someone. We have examined carefully the transcript of evidence on this

point and are of the opinion that, if the alleged contract was made on behalf of defendant, it was made by Cocks and no other person. The instruction falls within the principle of the cases above cited.

The objection to the second instruction complained of is apparently based on the theory that there are no facts pleaded or proved revoking any agency which Cocks might theretofore have had, and it is urged that it is error to give an instruction on an issue not supported by the evidence. It is true there is no evidence in the record that any agency conferred upon Cocks by defendant had ever been revoked, and that question was not an issue in the case. It was the contention of plaintiff that an agency sufficient to authorize Cocks to make the contract in question had been expressly conferred, while it was the position of defendant that no such agency ever existed. We cannot see, however, how the instruction, though technically erroneous, could possibly have misled the jury to the prejudice of defendant, and the case should not be reversed on that ground. Const. of Ariz., art. 6, § 22.

The objection to the last instruction complained of is that it is a direct comment upon the evidence and assumes facts not in existence. Instructions, of course, cannot be taken separately, but must be considered as a whole, and we think that this instruction, if the existence of a contract relied upon by plaintiff was first proven, stated correctly the measure of damages and assumed no facts not in evidence. Such being the case, there is no improper comment upon the evidence. The general instructions might have been fuller, but they covered the issues necessary to sustain a verdict correctly so far as they went, and defendant, when asked if it desired further special instructions, requested none. *Baker* v. *Maseeh*, 20 Ariz. 201, 179 Pac. 53.

Since there is evidence in the record to justify the jury in finding that plaintiff had the right to terminate the contract of March 1st at will upon reasonable notice to defendant, and that he had so terminated it, and that Cocks, defendant's mine superintendent, did as a matter of fact enter into the alleged oral contract of September 1st, and that such contract was within the apparent authority of Cocks to make on behalf of defendant, and that the same was breached by defendant, and that plaintiff was damaged thereby in an amount greater than the verdict of the jury, and since no prejudicial error appears on the record, the judgment of the superior court of Greenlee county is affirmed.

McALISTER, C. J., and ROSS, J., concur.