# Rudy *v.* Franklinville Ice & Storage Company, Appellant.

*Contract—Offer—Acceptance.*

In an action by an ice cream maker against an ice manufacturing company to recover for alleged overcharges for ice, the plaintiff claimed under an alleged contract by which she was to receive ice at the same rate at which the defendant sold it to drivers. The evidence offered by the plaintiff tended to show that the defendant had made to the plaintiff's husband, acting as her agent, an indefinite offer to sell ice to plaintiff at the same rate at which it was sold to drivers, without specifying the quantity of ice to be so sold or the period during which the

supply was to be continued. It also appeared that this offer was not accepted by plaintiff's husband. Defendant supplied the plaintiff with ice, but some months afterwards notified her that the ice delivered to her would thereafter be at the rate of a specified sum per ton. Subsequently plaintiff discovered that this rate was in excess of the rate at which drivers were supplied. *Held,* (1) that the failure of plaintiff's agent to accept the original offer established no contract between the parties; and (2) that if the offer of defendant should be considered as a continuing offer, it could be revoked at any time, and was revoked when plaintiff was notified of the specific sum per ton which she would be expected to pay.

Argued Oct. 11, 1911. Appeal, No. 109, Oct. T., 1911, by defendant, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1906, No. 4,028, on verdict for plaintiff in case of Belle M. Rudy, trading as Klondike Ice Cream Company, v. Franklinville Ice & Storage Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit to recover for alleged overcharges for ice. Before FERGUSON, J.

Defendant presented the following points:

1. The burden is upon the plaintiff to show clearly and explicitly the terms of the contract between the plaintiff and defendant. *Answer:* Refused. [1]

2. If the jury find that the plaintiff had knowledge of the fact that he was being charged $1.00 per ton more for ice than was being charged to dealers, and paid any of the bills rendered for ice at such price without objection or complaint, such action is evidence of the plaintiff's ratification of the price charged and paid, and if the jury believe the plaintiff knew of said charges and made no objection thereto, but on the contrary paid the amount charged, he is not entitled to recover from the defendant. *Answer:* Refused. [2]

3. The fact that the plaintiff made no complaint concerning the price charged after having learned of the same, until demand was made upon him for the payment of the balance due to the defendant some time thereafter, is to

be considered by the jury in determining the questions of fact in this case. *Answer:* Refused. [3]

4. If the jury find that the defendant notified the plaintiff that on and after a certain date the price of ice would be $5.00 a ton, and the plaintiff thereupon and subsequently purchased and paid for ice at said price, without any complaint, the plaintiff is not entitled to a verdict. *Answer:* Refused. [4]

5. Under all the evidence in the case, your verdict must be for the defendant. *Answer:* Refused. [5]

Verdict and judgment for plaintiff for $212.13. Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*Robert J. Byron,* with him *A. S. Longbottom,* for appellant.—No contract was proven to have been made by the appellant with the appellee: Immel v. Herb, 43 Pa. Superior Ct. 111; Butler v. Kemmerer, 218 Pa. 242; Buckmaster v. Ice Co., 5 Daly (N. Y.), 313; Sherman v. Kitsmiller, 17 S. & R. 45; Graham v. Graham, 34 Pa. 475; Wall's App., 111 Pa. 460; Purves' Est., 196 Pa. 438; Mays v. Patterson, 20 Pa. Superior Ct. 92; Butler v. Kemmerer, 218 Pa. 242.

*Frederick A. Sobernheimer, Jr.,* for appellee.—Inasmuch as appellants' testimony, by their manager Gaerthe, differed from that of appellee by Rudy and Kirk, the determination whether a contract existed and what were its terms was for the jury to find from the testimony: Harper v. Kean, 11 S. & R. 280; Glone v. Arleth, 162 Pa. 550; Haight v. Conners, 149 Pa. 297; Bilborough v. Coulter, 5 Phila. 12; Delaney v. Grove, 162 Pa. 138.

OPINION BY PORTER, J., March 1, 1912:

The plaintiff brought this action to recover the amount of alleged overcharges for ice which she had bought of the

defendant company, from July 10 to October 4, 1906, and for which she had paid at the rate of $5.00 per ton. She averred in her statement that she had, through her authorized agent, entered into a contract with the defendant company under the provisions of which she had covenanted to buy and the defendant had covenanted to sell, at the same rate or price per ton which the defendant charged to regular ice dealers, all the ice that she might order. The statement further averred that for the ice which she took during the period in question the defendant charged her at the rate of $5.00 per ton, while during the same period it charged retail dealers only $4.00 per ton, that she had paid her bills at the rate at which the defendant had charged the same, and that, having discovered the facts, this action was brought to recover the amount of $1.00 per ton so alleged to have been overcharged. The plaintiff recovered a judgment in the court below and the defendant appeals.

The inquiry which meets us at the threshold of this case is whether or not the evidence produced by the plaintiff was sufficient to warrant a finding that there was between the parties a contract, complete in its terms, which required the defendant to sell ice to the plaintiff upon the terms asserted during the period in question. The plaintiff sought to establish the contract upon which she relied by the testimony of her husband, who had acted as her agent in the negotiations out of which the contract was alleged to have arisen. That witness testified that some time in April, 1906, he went to the establishment of the defendant company, which was then in process of renovation and not ready to supply ice, "to see about getting ice and making a contract for ice." He there met the manager of the defendant company, Mr. Gaerthe, with whom he had the following conversation: "I asked Mr. Gaerthe about ice. He told me, 'Yes, sir, that is what we are here for, to make ice, and we would like to serve you.' Then I asked him about the price. He said, 'We haven't determined on the price.'" The witness then testified as to what was

said with regard to the character of ice which would be required in plaintiff's business, but the only thing said which is material to the determination of the question here presented was the conclusion of the conversation, as follows: "I says, 'I ought to get it cheaper than the drivers because I use the salty cakes and the broken ice.' 'No,' says he, 'I won't do that, but I tell you what I will do; I will give you the ice at the same price I give it to the drivers.'" The sentences above quoted are all that the testimony of this witness disclosed bearing upon the existence of any contract upon the part of the defendant to supply ice to the plaintiff. The concluding sentence above quoted, was an offer by the defendant to sell ice to the plaintiff at the same price at which it was given to drivers, but there was not a word in the testimony of this witness from which an inference could be drawn that the defendant had indicated a willingness to deliver any given quantity of ice or to continue the supply for any definite period. The plaintiff also called a witness named Kirk who testified that he was present during a part of the conversation between the husband of the plaintiff and Mr. Gaerthe, manager of the defendant company, and that he heard the latter say, "Mr. Kirk, we will sell Mr. Rudy and other people the ice all alike; the same price to everybody; we will treat them all alike; he will get the same price that anybody else gets at this plant; we will treat everybody alike here." This is the sum total of the testimony of this witness. The important matter here to be observed is that neither of these witnesses testified that Rudy, the agent of the plaintiff, said that he would accept the offer of the manager of the defendant company to sell ice on the terms stated, nor did Rudy say or do anything from which an acceptance by him, on behalf of his principal, of the offer of the defendant could be permitted to be inferred. He left the manager of the defendant company without saying whether this plaintiff would or would not buy any ice. The utmost that can be asserted as to the conversation upon which this plaintiff relies as constituting a contract

is that, if believed, it disclosed that the defendant had made an indefinite offer to sell ice to plaintiff at the same rate at which it was sold to drivers, without specifying the quantity of ice to be so sold or the period during which the supply was to be continued, and it also disclosed that this offer of the defendant had not been accepted by the agent of the plaintiff. That an offer to sell does not constitute a contract until it is accepted and that it may be withdrawn at any time before it is accepted is too well settled to require citation of authorities. The interview of the agent of plaintiff with the manager of defendant company, in April, 1906, did not result in a contract and the evidence produced by plaintiff was insufficient to sustain the averments of her statement. That the plaintiff fully understood she had no contract with the defendant requiring the latter to supply her with ice was established by a letter, admitted to be signed by her own hand, dated May 23, 1906, over a month after the alleged oral agreement, in which she says, "I write to know when you will be ready to do business, and what will be the price of ice per ton?" The learned counsel for the appellee in his brief frankly takes the ground that the plaintiff did not, by the negotiations between her agent and the manager of the defendant company in April, 1906, become bound to take any ice, thus stating what he concedes to be the result of that negotiation: "The appellee could purchase as much or as little as she pleased, and stop purchasing altogether when she pleased." This being the case the defendant had the right at any time to withdraw its offer to sell ice to the plaintiff at the rate at which it was sold to drivers of wagons, and when, prior to July 10, 1906, it notified the plaintiff that the price of ice on and after that date would be $5.00 per ton, the plaintiff was free to procure her ice from any source she saw fit, but if she continued to procure it from the defendant she would be required to pay the price indicated by the notice which she had received, and having paid at that rate, she cannot complain that she was overcharged.

Assuming that the defendant company did offer to sell ice to plaintiff at the same rate at which it sold to drivers, as to which the evidence was contradictory, there was never any such acceptance of it as to require the plaintiff to receive or the defendant to make future deliveries. If it be held that under the course of dealing between these parties the offer remained an open one, then each time that the plaintiff sent to the platform of the defendant company and procured ice that act would constitute an acceptance of the offer to the extent only of the delivery then made, it would not bind the parties to anything as to their action in the future. The offer being indefinite as to the quantity of ice which the defendant would sell and the period during which it was to be delivered, it was revocable at any time at the pleasure of the defendant company: Coffin v. Landis, 46 Pa. 426; Butler v. Kemmerer, 218 Pa. 242; McCullough-Dalzell Crucible Co. v. Philadelphia Co., 223 Pa. 336. When the defendant, prior to July 10, 1906, notified the plaintiff that the price of ice would be $5.00 per ton that put an end to all uncertainty as to the rate at which the plaintiff would be required to pay in the future, until further notice. That notice was, in effect, a new offer to sell. The prayer of the defendant for binding instructions ought to have been affirmed, and, the point containing that prayer having been refused, the motion for judgment non obstante veredicto ought to have prevailed.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment in favor of the defendant non obstante veredicto.