Argued Jan. 10, decided Jan. 17.    Modified April 25, 1911.

## TURNHAM *v.* CALUMET & OREGON MINING CO.

[112 Pac. 711: 115 Pac. 157.]

CONTRACTS—CONSTRUCTION—PARTIES BOUND.

1. An agreement between individuals which provided that one party agreed to accept in satisfaction of his claims arising out of a sale of mining property to a corporation a specified sum paid in cash by the adverse party and a promise to pay an additional sum out of the second payment to be made to the vendors·of the property, and signed by the parties as individuals, created an individual liability only, and the corporation purchasing the property was not bound thereby.

FRAUDS, STATUTE OF—PROMISE TO PAY DEBT OF ANOTHER—EVIDENCE.

2. Under Section 808, L. O. L., providing that an agreement to answer for the debt of another, is void unless in writing, one cannot prove by parol that a corporation assumed an obligation incurred by an individual and agreed to pay the same.

FRAUDS, STATUTE OF — CORPORATIONS — CONTRACTS — UNDISCLOSED PRINCIPAL—COMPLAINT.

3. The complaint in an action against a corporation purchasing mining property which alleged the employment by the owner of plaintiff to procure a purchaser; that on the date of the contract of purchase, a third person acting as agent of a corporation and in its behalf agreed with plaintiff that if he would relinquish the claim for commission for the sale of the property to the corporation, the third person would pay to plaintiff a specified sum in cash, and an additional sum when the second payment on the purchase price should be made, and that the corporation subsequently assumed the obligation and agreed to pay the same, proceeded on the theory that the original obligation was personal to the third person and that subsequently the corporation assumed that obligation, and did not proceed against the corporation as an undisclosed principal, for to do so, the complaint must allege that the original contract was made directly by the corporation, and there could be no recovery unless the corporation assumed the obligation in writing within the statute of frauds, Section 808, L. O. L.

CORPORATIONS—CONTRACTS BY AGENT—RATIFICATION—PLEADING.

4. The complaint did not state a case of ratification by the corporation with full knowledge of the contract made by the third person having no power to represent the corporation, and there could be no recovery on the theory of ratification.

CONTRACTS—CONSIDERATION.

5. A promise by a broker employed by the owner to procure a purchaser, made to a third person, to take a specified sum in cash and the promise of the third person for an additional payment in the future in satisfaction of his claim for commissions arising out of a sale of property to a corporation, does not result in any benefit to the corporation in absence of proof that the corporation paid less for the property than it agreed to or that its obligation to the owner was diminished by reason of the promise, and the agreement of the third person for the additional payment though made in behalf of the corporation, may not be enforced against it.

APPEAL AND ERROR—DISPOSITION—NONSUIT.

6. Where plaintiff attached defendant corporation's property as security for any judgment obtained, and the direction of a nonsuit upon reversing a judgment for plaintiff might leave plaintiff with no further remedy, a nonsuit will not be directed, but the cause will be remanded for further necessary proceedings.

From Josephine: HIERO K. HANNA, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by W. T. Turnham against the Calumet & Oregon Mining Company. After alleging the corporate character of the defendant, the complaint states in substance that prior to April 1, 1905, the plaintiff had an agreement in writing with three men, Burke, Albright, and Wintjen, whereby if he should find a purchaser for certain mining property owned by them he would be entitled to all of the purchase price received for said mines in excess of $20,000; that in pursuance of his contract of employment as a real estate agent he procured one Timothy F. Hopkins as a purchaser for said property; that afterwards Hopkins associated himself with several other men with whom he incorporated and organized the defendant corporation for the purpose of buying the property, and that the corporation entered into a contract for the purchase of this mining property. The complaint then states that on or about the date of the contract for the purchase of the mining property "Hopkins acted for and in behalf and as the agent of the defendant corporation, and did on behalf of said defendant corporation agree to and with the plaintiff that if

the plaintiff would relinquish all claim he had for commission for the sale of said property to the Calumet & Oregon Mining Company, that he would pay to the said plaintiff the sum of $180 cash, and the further sum of $2,000 when the second payment should be made on the purchase price of said mines; that the Calumet & Oregon Mining Company thereafter assumed the said obligation and agreed to pay same; that prior to the commencement of this suit and prior to the first day of April, 1906, the defendant did make a second and third payment on the purchase price of said mine to the owners thereof"; and further alleges a demand of the payment of the sum of $2,000.

The answer denies all the allegations of the complaint except that it admits the payment by the defendant of certain sums of money on the purchase price of the premises purchased by it from Burke, Albright and Wintjen.  At the trial the circuit court denied the defendant's motion for nonsuit and submitted the case to the jury. A verdict was returned for the plaintiff in the sum of $2,000, on which a judgment was rendered from which defendant appealed.     REVERSED WITH DIRECTIONS.

For appellant there was a brief and an oral argument by *Mr. Asa C. Hough.*

For respondent there was a brief and an oral argument by *Mr. Robert G. Smith.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. It will be noted that the complaint alleges an original individual promise of Hopkins. It is, indeed, stated in the complaint that "Hopkins acted for and in behalf and as the agent of the defendant corporation," and did on its behalf make the agreement, etc., but it is not alleged that this was done originally by the authority of the defendant or that with subsequent knowledge it ratified or made the agreement of Hopkins its own.  To

support the allegation about the agreement between the plaintiff and Hopkins, the plaintiff introduced in evidence a written contract made and entered into March 31, 1905, by and between Hopkins, as party of the first part, and Turnham, plaintiff herein, party of the second part, whereby "the party of the second part, for and in consideration of the sum of one hundred eighty ($180) dollars cash in hand paid by the party of the first part, hereby agrees and does hereby accept said sum in full satisfaction of all claims of whatsoever kind or nature arising out of the sale of the Golden Eagle Mining properties to the Calumet & Oregon Mining Company, save and except that the said party of the second part shall be entitled, as has already been provided, to an additional two thousand dollars ($2,000) out of the second payment to be paid Wintjen, Burke, and Albright on the properties above mentioned." This agreement was signed by the plaintiff and T. F. Hopkins as individuals without further designation. As alleged in the complaint and as set forth in the contract between the plaintiff and Hopkins, this clearly constituted an individual liability of Hopkins. In the face of the denials in the answer it became necessary for the plaintiff to prove the allegation of his complaint "that the Calumet & Oregon Mining Company thereafter assumed the said obligation and agreed to pay same." The evident purpose of this allegation is to assert a new promise by the defendant to pay the debt incurred by Hopkins in his agreement with plaintiff; but it may well be doubted if the pleading is sufficient for that purpose in that it does not state the consideration for the new promise attributed to the defendant. 9 Cyc. 717; 4 Enc. Pl. & Pr. 928; *Southern Ind. L. & S. Inst.* v. *Roberts,* 42 Ind. App. 653 (86 N. E. 490); *Southern Ry. Co.* v. *Wilcox,* 98 Va. 222 (35 S. E. 355). But passing this, the question to be decided in this case is whether or not that allegation is proven.

2. A careful examination of the testimony fails to disclose any writing indicating such a promise to pay authorized by the defendant. Moreover, no oral testimony discloses any corporate action in that behalf. No further citation of authorities is deemed necessary than a quotation of the provisions of Section 808, L. O. L.:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law. * * 2. An agreement to answer for the debt, default, or miscarriage of another."

3. The plaintiff, not having offered any such writing, was without legal or competent testimony to sustain his allegation that the defendant assumed the obligation of Hopkins and agreed to pay the same.

This is not an action directly against the defendant as an undisclosed principal for whom an agent contracted. Manifestly the complaint proceeds upon the theory that the original obligation was one personal to Hopkins, and that subsequently the defendant assumed that obligation. If the plaintiff had proceeded against the defendant as an undisclosed principal, he should have alleged that the original contract was made directly by the defendant.

4. This consideration distinguishes this case from that of *Schreyer* v. *Turner Flouring Company*, 29 Or. 1 (43 Pac. 719), principally relied upon by the plaintiff here. In that case the plaintiff declared upon a loan made directly to the defendant. company, and proved that the latter actually received the money and repaid the debt in part, and further showed written acknowledgments of the defendant admitting the debt to the plaintiff. The plaintiff here relies largely upon the language of this court in that case: "But where, with full knowledge of

all the facts, the corporation assumes the contract and agrees to pay the consideration, or accepts and retains the benefits, it will be bound thereby." The pleadings in the case at bar, however, do not state a case of ratification with full knowledge of an unauthorized contract made by one who had no power or permission to represent the defendant.

5. Neither is it shown that the defendant received any benefits from the transaction. Having found a purchaser for the property, the plaintiff probably had some claim against the original owners of the mines for his services as a real estate broker in finding that purchaser, and if, in the language of his contract with Hopkins, he accepted the sum of $180 and the promise of Hopkins for an additional $2,000 in full satisfaction of all claims of whatsoever kind or nature arising out of the sale of this mining property to the defendant, a substantial benefit would result to the original owners of the mines, but not to the defendant. It is not alleged or proven that by reason of any agreement between Hopkins and the plaintiff the defendant paid less for the mine than it originally agreed to pay or that its obligation to the first owners was in any wise diminished.

These features clearly distinguish the case at bar from the Schreyer case, and strips it of every question except the one already indicated, namely: Did the plaintiff comply with the statute of frauds in endeavoring to prove his allegation that the defendant assumed the obligation of Hopkins and agreed to pay it?

We are of the opinion that the testimony of the plaintiff wholly fails to meet the requirements of that statute, and that the court below should have allowed the defendant's motion for a nonsuit.

The judgment of the circuit court is reversed, with directions to enter a judgment of nonsuit in favor of the defendant.        REVERSED WITH DIRECTIONS.

Decided April 25, 1911.

## ON MOTION TO MODIFY.

[115 Pac. 157.]

*Mr. Robert G. Smith* for the motion.

*Mr. Asa C. Hough, contra.*

Opinion PER CURIAM.

6. Since reversing the judgment in this cause an affidavit has been filed by plaintiff's counsel calling attention to the fact that when this action was commenced his client caused certain of defendant's property to be attached as security for any judgment that he might obtain, and that if a nonsuit is entered as directed he will be remediless, setting forth the circumstances whereby such a result might be possible.

In view of the consequences apprehended, the order directing a nonsuit will be set aside, and the cause is remanded for such further proceedings as may be necessary.                    REVERSED: REMANDED.