THE CAPITOL FOOD COMPANY *v.* MODE & CLAYTON.

Opinion delivered March 23, 1914.

1.  CONTRACTS—VARYING WRITING BY PAROL.—Where a written contract is complete in itself, it can not be varied by parol testimony. (Page 169.)
2.  SALES—DELIVERY—TITLE PASSES, WHEN.—Where defendant contracted to purchase goods from plaintiff, the delivery of the goods to a carrier pursuant to the terms of the contract, constitutes a delivery to defendant, and passed title to defendant. (Page 169.)
3.  CONTRACTS—ALTERATIONS—CONSIDERATION.—There must be a new consideration for the alteration of a contract unless there are mutual undertakings which may form a consideration for the change. (Page 169.)
4.  CONTRACTS—CONSTRUCTION—QUESTION FOR COURT.—Where a contract as evidenced by letters and telegrams is not ambiguous, it is the duty of the court to construe the contract as evidenced by the writings, and it is error to submit the construction of the same to the jury. (Page 171.)

Appeal from Faulkner Circuit Court; *Eugene Lankford,* Judge; reversed.

*P. H. Prince,* for appellant.

1.  The contract was in writing, plain in its terms, and oral evidence was not admissible to add to or vary it. 102 Ark. 326; *Ib.* 515.

2.  Delivery to the carrier for shipment is delivery to the consignee. 24 A. & E. Enc. L. (2 ed.), 1071; 83 Ark. 426; 98 *Id.* 495; 76 *Id.* 371.

3.  The right to rescind must be done promptly. If the contract is entire the vendee must rescind the contract as a whole, and put the vendor *in statu quo.* 24 A. & E. Enc. L. (2 ed.), 1105-1111; 38 Ark. 351; 4 *Id.* 467; 5 *Id.* 395; 38 *Id.* 334.

*Locklar & O'Daniel* and *C. E. Condray,* for appellees.

1. The terms and conditions agreed upon subsequently became part of the contract and binding them made known to appellant, and they notified appellees to accept the goods subject to such terms. 9 Cyc. 597-8, note 92; 5 B. & Ad. 58-65; 11 Ark. 189; *Ib.* 389; 28 *Id.* 64.

2. Any subsequent agreement, oral or written, is competent to show an alteration, modification or discharge of a previous agreement in writing. 58 Ark. 381; 65 *Id.* 371; 87 *Id.* 101; 9 Cyc. 597-8, note 92; 98 Ark. 219.

3. Appellees had the right to retain the profits for the goods actually sold. 64 Ark. 228; 49 Wis. 151.

McCulloch, C. J.  Plaintiff, The Capitol Food Company, was engaged in the business of manufacturing and selling stock remedies at Tiffin, Ohio, and through its traveling salesman sold a bill of goods, upon written order, to defendants Mode & Clayton, merchants at Conway, Arkansas, and this is an action instituted to recover the sum of $866.68 alleged to be due as balance on the account.

The goods were duly shipped to defendants as per the written order and accepted by the latter after some further correspondence between the parties; but the defendants allege in their answer that the goods were sold on condition that plaintiff's traveling salesman, one Vann, "agreed to return after the holidays, work the trade and secure orders for acceptance by defendants, and to come back and work the trade as often as defendants needed him, or send a man to do this work at any time defendant requested until all of said goods were sold," and that said Vann "did not return after the holidays to work the trade as agreed, nor did plaintiff send any other salesman," and that "plaintiff did not send E. H. Vann, or any other salesman, to work the trade and secure orders as agreed, and in this respect failed entirely to comply with its part of the agreement, though defendants were ready and anxious at all times to comply with their part of the agreement in every particular."

They further allege that they sold part of the goods and paid the amount, less commissions, to plaintiff and shipped the remainder of the goods back; but that plaintiff refused to accept same.

The trial of the case before a jury resulted in a verdict in favor of defendants, and the plaintiff has prosecuted an appeal.

According to the evidence adduced, plaintiff's agent, Vann, visited defendants at their place of business in Conway and secured an order for goods aggregating in price the sum of $1,000. The contract was signed by defendants and by Vann, the salesman, and purported to cover the entire contract between the parties. It stipulated that there should be an "amount of free goods shipped to pay freight, $270;" that verbal or special agreements in any way affecting the payment of the bill should not be allowed; that the order should not be subject to countermand, and "that any special agreement to be valid must appear on the front of the original order." The order was dated December 16, 1910, and the goods were shipped out by plaintiff on December 27, 1910, reaching Conway in due course of transportation. Defendants claimed that Vann had verbally agreed that the "free goods" to be sent under the order should amount to sufficient to make a profit of 25 per cent., and also that he would come back after the holidays and help defendants "work" the trade. Before the goods reached Conway, they discovered that the amount of free goods specified in the order was not sufficient to cover the freight and 25 per cent profit, and they addressed a letter to plaintiff calling the latter's attention to said verbal agreement and asking the question whether plaintiff was 'willing to make good the extra amount of free goods' and the other conditions specified above." Plaintiff replied to this letter under date of January 5, which letter was not satisfactory to defendants, and on January 14, 1911, which was after the goods had reached Conway, but before they had been taken from the possession of the car-

rier by defendants, the latter addressed the following letter to plaintiff:

"Gentlemen: Your favor of the 5th inst. is rather indefinite, and we want a specific promise that you will allow us enough free goods and discount to make us 25 per cent profit on the line if we are to accept the goods, and also that you will send a man here as often as we want one to help us work the trade. Better wire us on receipt of this, as there is liable to be charges accumulating on the shipment, and as Mr. Vann has not kept his promise as to when he would be back here and as to how much free goods he had figured out in the order that he had prepared for us to sign, we will not accept the shipment unless you promise definitely that you will make the goods show us a profit of not less than 25 per cent after filling the orders he gave us with the free goods he gave the customers and paying the freight.

"Yours truly."

That letter was received by plaintiff on January 16, and on the same day the plaintiff replied by telegraph, as follows:

"Mode & Clayton: Will ship additional free goods to make up 25 per cent profit. Accept shipment. Writing Vann to call upon you. Kindly mail us copy of contract. (Signed) The Capitol Food Company."

That telegram was followed by a letter written on the same day as follows:

"Your valued favor of the 14th inst., came duly to hand and contents carefully noted. We will say that we are wiring you this morning advising you, that we are perfectly willing to ship you goods, as you desire to make up your profits of 25 per cent. We are going to kindly ask that you accept the shipment, so as to be able to take care of the orders, which Mr. Vann turned in to you. Now, gentlemen, we are going to kindly ask that you mail us a duplicate of the contract, which you had with Mr. Vann, and assure you, that we are perfectly willing to carry out the same. We are perfectly willing to carry out your signed contract, and would be pleased to have

you mail us a duplicate. And you will advise us what goods you desire us to ship, to make up 25 per cent profit."

Upon receipt of the telegram defendants accepted the goods from the carrier.

Plaintiff objected to the introduction of any testimony concerning the oral agreements alleged to have been made by Vann. Exceptions were saved to the rulings of the court in admitting the evidence, and error is assigned in the court's rulings.

The written contract was complete in itself and its terms could not be varied by parol testimony. *Lower* v. *Hickman,* 80 Ark. 505; *Zearing* v. *Crawford, etc.,* 102 Ark. 575; *Ford* v. *Fix,* 112 Ark. 1, 164 S. W. 726.

Delivery of the goods to the carrier, pursuant to the terms of the contract, constituted a delivery to the vendees and passed the title to them. *Main* v. *Jarrett,* 83 Ark. 426.

The contract was, therefore, executed to that extent.

The written correspondence between the parties constituted an additional agreement, and it is contended that there was no consideration for that agreement, the contract being then completely executed by the plaintiff.

It is ordinarily true that there must be a new consideration for the alteration of a contract unless there are mutual undertakings which may form a consideration for the change. *Feldman* v. *Fox,* 112 Ark. 223, 164 S. W. 766.

But in this case, when the correspondence took place which operated as a modification or alteration of the contract, the defendants had not accepted the goods from the carrier and were refusing to do so, contending that they were within their rights, and in order to induce them to alter their position, the plaintiff agreed, to some extent, to the condition stated in the letter of defendants. This, we think, constituted a sufficient consideration, for it was in the nature of a compromise of the controversy between the parties. According to the modified contract, as evidenced by the letters, the plaintiff agreed to "ship

additional goods to make up 25 per cent profit," and it appears, from the uncontradicted evidence, that the plaintiff complied with its promise.

The remainder of the telegram did not contain any additional promise. The remaining language of the telegram amounted only to a request to accept the shipment, and the statement that the plaintiff was writing to their agent, Vann, to call upon them. Defendants had no right to construe that language into an agreement on the part of the plaintiff to furnish a salesman "to work the trade and secure orders." The letter of defendants made a certain specific demand upon plaintiff, and the latter, in its telegram, stated what it undertook to do, and the evidence does not show any failure on the part of the plaintiff to perform its undertaking.

The contract as evidenced by the letters and telegram was not ambiguous, and it was the duty of the court to construe the contract evidenced by those writings. Instead of doing so, the court submitted that issue to the jury upon the following instruction:

"It is contended by the defendants in this case, that there was a different agreement than that in the order or contract they have. Because they claim to have informed the company about this different contract, they had with the agent. Now, that agreement with the agent is not binding upon the company, unless ratified by it. But if the company afterward ratified that agreement by letter or telegram, then they would be bound by it. It is a question of fact for you to decide whether that different contract or agreement was made, and, if made, whether it was ratified by the company, through letters and telegrams you have just heard read. If not ratified by the company, it makes no difference whether made or not. These two questions will have to be settled by you, if the agent and Mode & Clayton did make this agreement, and if it was ratified by the company. If the agreement was made and was ratified by the company, the plaintiff can not recover in this suit, if not made, or, if not ratified, then the plaintiff can recover in this case."

There was no question of ratification in the case. The contract, as before stated, being complete and in writing, its terms could not be varied by parol testimony showing other provisions agreed to by the agent. The subsequent change in the contract, as evidenced by the letter and telegram, was, as we have already stated, valid and binding upon the parties, but the evidence shows that plaintiff has complied with its contract, and the court was in error in submitting that question to the jury.

For the error in admitting testimony concerning the oral agreement, and for giving the instruction quoted above, the judgment must be reversed and the cause remanded for a new trial.  It is so ordered.