United States Express Company *v.* Rea & Company.

Opinion delivered December 6, 1915.

1.  Sales—delivery to carrier—title.—The delivery of goods to a common carrier, when made in pursuance of an order to ship, is in effect a delivery to the consignee and the consignor thereafter has neither the title nor the right to the possession of the shipment, nor to maintain an action for damages thereto.

2.  Sales—delivery f. o. b. at designated place—title.—When a contract of sale calls for delivery f. o. b. at a designated place, the title will pass upon such delivery, unless the facts of the case show the intention of the parties to be that it shall pass at some other time.

3.  Sales—shipment by express—title—delay—action for damages.—A. shipped goods by defendant express company to B. Damages arose because of defendant's negligent delay in making delivery. B. released defendant from liability, giving it authority to adjust the claim for damages with A. *Held,* A. could maintain an action for the damages against the express company.

4.  Appeal and error—measure of damages—harmless error.—When the trial court improperly instructed the jury as to the measure of damages, the error will be held to be harmless, when the jury disregarded the instruction and reached a correct verdict.

5.  Carriers—transportation of goods by express—delay.—In an action for damages for negligent delay in the transportation of perishable fruit, the erroneous admission of evidence of defendant's settlement of similar claims, will be held harmless, when the undisputed evidence shows the carrier to have been negligent.

Appeal from Crawford Circuit Court; *James Cochran,* Judge; affirmed.

Appellees brought this suit against the express company for damages to 100 crates of strawberries, alleged to have been caused by the negligence of the express company in failing to deliver them at the appointed time.

The contract of sale was made over the telephone from Oklahoma City to Van Buren, Arkansas, and R. S. Hynes, the witness who sold the berries testified: "I sold them to Mr. Thomas, manager, for $1.85 per crate, f. o. b. here, to be delivered in Oklahoma City. Proper connection was not made at Wister and the berries laid over there Saturday until 12 o'clock and failed to reach Oklahoma City until too late for market." He said they had been buying and shipping berries on the train leaving Van Buren at 3:30 P. M. which had been arriving on the next morning and he was familiar with the running of express trains on the line.

On cross-examination he said: "I made this sale to Dawson Produce Company May 22, by long distance 'phone; Mr. Thomas called me at Van Buren and I agreed to sell the berries at $1.85 a crate at Van Buren, * * *. On this occasion they called us and bought 100 crates, requesting us to deliver to the express company at Van Buren, and ship out that afternoon."

Thomas, the agent for the purchaser stated: "I ordered berries on May 22, from J. L. Rea & Company, by telephone, provided they were shipped, to arrive in Oklahoma City the morning of May 23. The purchase price was $1.85 a crate, if they arrived early Saturday morning." And on cross-examination said: "I made the purchase of berries by telephone, agreeing to pay $1.85 f. o. b., and instructed shipper that unless berries were shipped in time to arrive at Oklahoma City early on May 23, we could not handle same."

The agent of the express company at Oklahoma City, stated that the berries arrived on the Rock Island train about 8 P. M. on May 23, after the agent at Wister had advised that the shipment had missed the train due to arrive in Oklahoma City that morning. He informed the

consignee of this fact, who stated to him that the shipment would be refused upon arrival.

No instructions for disposition were given by the Van Buren agent and the berries were placed in cold storage in Oklahoma City on the night of the 23d, and sold the next day by the express company for $106.50.

The consignee executed to the express company an order authorizing the adjustment and settlement of the claim with the consignor, as follows:

"Oklahoma City, June 19, 1914.
"To the United States Express Company:

"You are hereby authorized to adjust with J. L. Rea & Company, Van Buren, Arkansas, claim entered on account of loss of 100 crates of strawberries sent to (or from) my (or our) address on Dawson Produce Company, Oklahoma City, Okla.

On such settlement I (or we) release United States Express Company from all claims or liabilities on account of loss in above case. In signing this order or release I (or we) hereby state that I (or we) have not received the articles mentioned in said claim.

Dawson Produce Company,
By John D. Thomas.
Witness:   Frank B. Beecher."

The court over appellant's objection instructed the jury if they should find that the plaintiff sold the strawberries to the produce company of Oklahoma City to be delivered on board the cars at Van Buren and shipped by express to Oklahoma City, that the berries were delivered to defendant and by it transported to Oklahoma City and the consignee refused to receive them on account of delay in transmission, and waived its claim for damages against the defendant in favor of the plaintiff, and authorized the express company to adjust the claim with plaintiff, the plaintiff had the right to bring the suit, and refused to give requested instructions 5 and 10 for appellant in which the jury were told that if they found when plaintiff delivered the berries to the express company, they performed their contract with the commission com-

pany, that they could not recover against the defendant for the damages to the shipment of berries, notwithstanding they had been delayed in transportation.

The court also gave over its objection instructions relative to the market value of the berries at the place of delivery, refusing to instruct as to the sale price. From the verdict and judgment for $185, this appeal is prosecuted.

*C. E. & H. P. Warner* and *Cecil R. Warner,* for appellant.

1. The title to the property was not in appellees and they were not entitled to maintain this action. When the berries were delivered to appellant, the title to the same passed to the Dawson Produce Company, unless the intention of the parties was to the contrary, and appellees had no further right to or interest in them. 115 Ark. 221; 105 Ark. 53; 111 Ark. 521; 79 Ark. 353; 112 Ark. 165; 98 Ark. 482; Burdick on Sales (3 ed.) 73, 74. The assignment by the Dawson Produce Company to appellant purported only to authorize appellant to settle with the appellees, and if no settlement was made, it could have no effect whatever. It went no further by its express terms, than to authorize the defendant to adjust the claim with appellees, and it can not be said that an assignment of the claim resulted by implication.

Such a claim is not assignable under the statute. Kirby's Dig., § § 509, 6000.

Instructions 5 and 10 requested by the appellant should have been given. It was a question of fact as to whether or not the parties intended that the title to the berries should pass to Dawson Produce Company upon delivery of same to appellant, and that question was solely within the province of the jury to determine. *supra;* 50 Ark. 477; 23 Ark. 115; 76 Ark. 468; 74 Ark. 563; 71 Ark. 38.

2. The court erred in admitting testimony tending to show claims for other consignments of berries than those involved in this action, shipped on board this same express train, and the settlement thereof by appellant.

Offers of compromise of such claims would be inadmissible in a suit based on either of such claims. 85 Ark. 337; 2 Wigmore on Evidence, § 1061; *Id.* p. 1231; 3 Elliott on Railroads, § 1243; 42 N. E. 247; 24 S. C. 366. It is questionable whether it could be shown that there were other shipments by the same party delayed at the same place at the same time. 11 Enc. of Ev. 770; 58 Ark. 454. See also, 68 Ark. 225.

3. The court's instruction on the measure of damages was erroneous. Regardless of the fact that the consignee refused to receive the goods when tendered, and the consignors refused to give instructions when requested, plaintiffs now seek to hold appellant for the alleged market value of the berries. If they were the owners of the berries, they certainly were not entitled to abandon the shipment altogether, and sue appellant for conversion. 99 Ark. 568; Hutchinson on Carriers (3 ed.), § 1372; 90 Ark. 524. The court's charge was in effect that if the jury should find for the plaintiffs, the measure of damages would be the market value of the berries in Oklahoma City on the date of the arrival, less the express charges. If the consignee had brought suit the measure of damages would have been the difference in market value at the time the shipment should have reached the destination, and the market value of it at the time it did reach the destination, with interest, after deducting charges for transportation. *Supra;* 90 Ark. 452; 46 Ark. 485; 73 Ark. 112.

But in this case the plaintiffs had sold the berries for a certain price, viz: $185. If the berries had arrived on time, that amount would have been realized by plaintiffs, and no more. They are entitled to no larger sum than would compensate them for their loss, and in no event could that have exceeded the sum of $185.

*E. L. Matlock,* for appellee.

1. The presumption is in favor of appellee's right to sue, and the burden is on appellant to show that the suit was not brought by the proper party. 104 Ark. 327.

After the consignee refused to accept the berries and appellant sold them and obtained from the consignee the order and release authorizing the latter to deal with appellees in the settlement of the claim, it can not be heard to dispute the right of appellees to sue. This release was executed for the benefit of appellees, and of itself was sufficient authority to sue.

Aside from the release there were conditions in the sale and shipment of the berries which prevented the title from passing from appellees until the conditions were performed. The undisputed testimony of the witness Thomas brings this case clearly within the rule announced in *Gibson* v. *Inman Packet Co.,* 111 Ark. 521. See also, 32 Md. 344; 103 Ala. 671; 56 N. J. L. 617; 19 Ore. 571; 24 Pac. 989.

2. There was no error in the admission of evidence as to other settlements. It was competent to show these voluntary payments for berries delayed at the same time, and in the same way as these berries, and it was a question for the jury to determine whether or not the payments were admissions on the part of appellants. 70 Ark. 226. But if this evidence was incompetent, it was not prejudicial if the appellant's negligence was not otherwise established. 68 Ark. 606.

3. The court in its second instruction correctly instructed the jury as to the right of the consignee to reject the shipment. The condition was that the berries should arrive in Oklahoma City on the morning train Saturday for the market of that day, and the consignor was informed that unless the berries arrived on that train, consignee could not use them. 111 Ark. 521. Appellant made no request of appellees for directions as to disposition of the berries until the next day when there was no market for the berries, and after they were already damaged by its negligent delay. While it is true that ordinarily the owner can not on account of unreasonable delay in the delivery of the goods refuse to receive them and sue as for conversion, yet in this case, there was no tender of the berries back to appellees, and could not have been

under the circumstances. 110 Ark. 81; 101 Ark. 179; 90 Ark. 524.

Appellants were entitled to recover the market value of the berries at Oklahoma City, on May 23, less the cost of carriage. 112 Ark. 110.

Kirby, J., (after stating the facts). It is contended for reversal that the court erred in the giving and refusing of said instructions and in the admission of incompetent testimony.

(1) The law is well settled that the delivery of goods to a common carries when made in pursuance of an order to ship, is in effect a delivery to the consignee and the consignor thereafter has neither the title nor the right to the possession of the shipment nor to maintain an action for damage thereto. *Roberts Cotton Oil Co.* v. *Grady,* 105 Ark. 53; *Gibson* v. *Inman Packet Co.,* 111 Ark. 521; *Capitol Food Company* v. *Mode & Clayton,* 112 Ark. 165; *Warren & Ouachita Valley Ry. Co.* v. *Southern Lbr. Co.,* 115 Ark. 221.

(2) In Burdick on Sales, pages 73 and 74, after announcing the rule, it is said: "In accordance with this rule, when the contract calls for delivery 'f. o. b.' at a designated place, the title will pass upon such delivery, unless the facts of the case show the intention of the parties to be that it shall pass at some other time."

(3) From the testimony relative to the terms of the contract of sale, it can not be said to be undisputed that it was the intention to make the sale conditioned on the arrival of the berries at Oklahoma City on the morning of the day after the shipment from Van Buren, as was customary in the transportation, and as would have been the case, but for the delay or failure to transfer the consignment to the first train passing through Wister after its arrival there, as was generally done.

Nor does the undisputed testimony show that it was not the intention to make the sale conditioned on the delivery of the berries in Oklahoma City at 5 A. M. the next morning, which would have been the case after their delivery to the express company at 3:30 P. M. on May 22, but

for the failure of said company to make the transfer to the first connecting train at Wister.

If the sale was not so conditioned, the title passed to the consignee upon delivery of the berries to the carrier in time for arrival at destination the next morning and the shipper would have had no right to maintain the suit for damages and under the state of the testimony the appellant, it being a question for the jury, would have had the right to its said instructions numbered 5 and 10 but for the order of the consignee authorizing the carrier to adjust and settle the claim for damages with the shipper.

It being doubtful whether the sale was complete upon delivery to the consignee or conditioned upon the arrival of the shipment at the destination the next morning, the said order of the consignee authorizing the adjustment and settlement of the claim with the consignor and releasing the carrier from any claim of liability, reduced the matter to a certainty, and since said order and release barred the consignee from any claim for damages to the shipment, it authorized the recovery or bringing of suit therefor by the consignor.

It is questionable whether the sale was complete upon delivery of the berries to the carrier or delivery at destination, the consignor or the consignee only having the right to sue for damages according as the jury might find the fact to be and the consignee having released the carrier from the liability in the consignor's favor and authorized the settlement with him, no error was committed in refusing said requested instructions 5 and 10 and in giving instruction numbered 1.

(4)   The court erred in its instruction submitting the question of market value of the berries at the place of delivery, since the contract shows that they were sold at $1.85 per crate and if it had been performed the plaintiff could not have received more in any event.

The jury however, found in accordance with the fact fixing the damages at the sale price without regard to the erroneous instruction and no prejudice could have resulted from it.

(5)   Neither does the error committed in the introduction of the testimony relative to the settlement of like claims by appellant of others for damages to berries, shipped on the same train the day of this shipment, call for a reversal of this case, since the undisputed testimony shows that the carrier was negligent in failing to have the consignment transferred to its first connecting train at the junction point and was liable for the consequent damages for delay.

We find no prejudicial error in the record and the judgment is affirmed.