[Civil No. 2694. Filed May 21, 1928.]

[267 Pac. 794.]

CARL PLEASANT, J. H. JENKINS and SOUTH-ERN SURETY COMPANY, a Corporation, Appellants, v. ARIZONA STORAGE AND DISTRIBUTING COMPANY, a Corporation, Appellee.

Messrs. Allen, Underwood & Smith and Messrs. Cunningham & Carson, for Appellants.

Messrs. Sloan, Holton, McKesson & Scott, for Appellee.

LOCKWOOD, J.—Carl Pleasant, one of the defendants herein, entered into a contract to construct a certain storage dam on the Agua Fria River about twenty miles north of Marinette, the railroad station nearest to the dam site. In the construction of this dam and the works appurtenant thereto it was necessary to haul large quantities of cement, steel, and other supplies to the proposed dam site. J. H. Jenkins, the other defendant, had contracted originally with Pleasant to do the hauling, but for some reason it was deemed advisable to have the actual work done by someone else, and Arizona Storage & Distributing Company, a corporation, plaintiff herein, entered into a contract with Jenkins and Pleasant to do it. The contract was in writing, and executed by the parties thereto on the nineteenth day of April, 1926. On the following day, April 20th, plaintiff began hauling material and supplies to the dam site, and continued so doing until September 11th, on which date it ceased to haul. Defendants demanded that plaintiff con-

tinue the work and complete its contract, and notified it that, if it did not do so, they would be compelled to relet the unperformed portion of the contract, which they finally did, and thereafter plaintiff brought this suit.

It is founded upon three causes of action. In the first, plaintiff first alleges the execution of the written contract, which is set up in full, and which, so far as its language is material in this case, reads as follows:

"It is understood and agreed that the contractor will be responsible for and pay all railroad demurrage claims, if any, which may arise under this contract. It is understood and agreed that the road joining the Marinette-New River county highway and the Pleasant Lake dam site shall be widened and reconstructed as per drawing G–38, entitled 'Alignment Frog Tanks Auto Road.'

"It is understood and agreed that the owner will grade sufficient length along the Marinette team track so that any and all materials can be unloaded in the event arrangements cannot be made with the railroad for handling heavy equipment or machinery from the industry spur now serving the Marinette cotton gin. The owner will maintain embankment from engineer's station 4 to station 8, drawing G–38.

"Article II.

"Time of Completion.

"The work to be performed under this contract shall be commenced within ten (10) days and shall be completed by January 1, 1928. . . . "

"Article 5. *Contractor's Understanding.* It is understood and agreed that the contractor has, by careful examination, satisfied himself as to the nature and location of the work, the conformation of the ground, the character, quality, and quantity of the materials to be encountered, the character of equipment and facilities needed preliminary to and during the prosecution of the work, the general and local conditions, and all other matters which can in any way affect the work under this contract. No verbal agreement or conversation with any officer, agent, or employee of the owner, either before or after the execution of

this contract, shall affect or modify any of the terms or obligations herein contained. . . . ''

"Article 9.  *The Owner's Right to Do Work.*  If the contractor should neglect to prosecute the work properly or fail to perform any provision of this contract, the owner, after three days' written notice to the contractor, may, without prejudice to any other remedy he may have, make good such deficiencies and may deduct the cost thereof from the payment then or thereafter due the contractor.''

Plaintiff then alleged as follows:

"Plaintiff alleges that at the time of the entering into of said contract, to wit, on the 19th day of April, 1926, it was verbally agreed by and between plaintiff and said defendants that said contract should not go into effect until the defendants should do and perform or cause to be done and performed certain work, namely, the construction and improvement of the road mentioned and referred to in article I of said contract, and that, pending the time when said defendants should do or cause to be done said work, plaintiff should furnish the tools, labor, and equipment and prosecute the work described in said contract, and that defendants should pay plaintiff therefor at what is termed the day rate; that is to say, the prices which plaintiff ordinarily and usually charged and received for doing similar work.  Plaintiff further alleges that it proceeded to furnish said tools, labor, and equipment and to perform said work under said verbal agreement from said 19th day of April, 1926, until the 25th day of July, 1926.''

It was further alleged that there was still due under the verbal contract the sum of $22,199.45.

The second cause of action set up the written contract and alleged work thereunder from July 25 to September 11, 1926, a failure by defendants to pay the contract price for such work, a refusal by plaintiff on account of such failure to continue with the contract after September 11th, and an allegation that the reasonable value of the work done between July 25th and September 11th was $7,718.41.

The third cause of action need not be considered, as it was admitted on oral argument that the judgment thereon was correct.

Defendants demurred to each cause of action separately, which demurrers were by the court overruled. Answering, defendants admitted the execution of the written contract, and alleged that all work done by plaintiff and for which it was seeking to recover under the first and second causes of action was done under the written contract, denied that they had failed to make the payments provided for in such contract, and alleged that plaintiff had, without excuse, ceased to perform the contract on September 11th. They admitted that there was due plaintiff on the contract the sum of $11,972.81. They then set up six set-offs and counterclaims. The first was for work performed for plaintiff, in the sum of $2,945.87; the second, for board furnished to plaintiff's employees in the sum of $1,804.50; the third, for the rental value of certain machinery in the sum of $4,380; the fourth, for demurrage paid in the sum of $1,328; the fifth, for $3,690.98, the amount defendants claimed they had been compelled to pay in excess of the contract price to have certain hauling done during the month of July, which should have been done by plaintiff, at the request of the latter that defendants do it; and the sixth, for damages defendants allege was caused them by reason of plaintiff's abandoning the contract on the 11th of September, through the necessity of paying an increased price for all hauling done thereafter, over the amount for which plaintiff had contracted to do it. All these counterclaims were denied by plaintiff.

Upon the issues thus framed, the case was tried before a jury and a verdict returned in favor of plaintiff on the first cause of action in the sum of $14,057.45; on the second cause of action in the sum of $6,891.83; on the third cause of action in the sum of

$393; and on defendants' counterclaims together in the sum of $250, it not being specified on which particular counterclaim this last verdict was returned. After the usual motions for new trial were made and overruled, defendants have brought the matter before us for review.

There are some fifty-one assignments of error which we will consider as seems advisable. The first is that the court erred in overruling plaintiff's demurrer to the first cause of action. On examining the complaint, we find that the written contract was first set up, and that plaintiff then alleged that:

*"At the time of the entering into of said contract . . . It was verbally agreed* by and between plaintiff and said defendants that said contract should not go into effect until the defendants should do and perform or cause to be done and performed certain work, namely the construction and improvement of the road mentioned and referred to in article I of said contract, and that, pending the time when said defendants should do or cause to be done said work, plaintiff should . . . prosecute the work described in said contract, and that defendants should pay plaintiff therefor at what is termed the day rate. . . . "

This is an allegation of a contemporaneous oral agreement which, on its face, modifies the written agreements in two distinct and important particulars. The written agreement provides that the work shall be commenced thereunder within ten days from date. The modification was that such work was not to be commenced until the completion of a certain road described in the written contract. The written agreement provides a specific price per ton mile for the hauling; the oral agreement changes that to the ordinary day rate usually charged by plaintiff.

This court has repeatedly and consistently held that all contemporaneous and prior conversations and agreements and negotiations in regard to the terms of contracts finally reduced to writing are merged in

the written contract and by it supplanted, and are thereafter immaterial and inadmissible in evidence to vary the terms of the written contract. *Valentine* v. *Shepherd,* 19 Ariz. 241, 168 Pac. 643; *Wadin* v. *Czuczka,* 16 Ariz. 371, 146 Pac. 491; *Rebeil* v. *Manning,* 17 Ariz. 111, 149 Pac. 59; *Merchants & Stock Growers Bank et al.* v. *Marley,* 33 Ariz. 294, 264 Pac. 471. It is urged by plaintiff in its brief that a written contract may be postponed, changed or abrogated in whole or in part by the verbal agreement of the parties thereto. It unquestionably is the law that, in the absence of statutory provisions to the contrary, *after* a written contract has been completed, a *new* and *independent* oral contract may be made on a proper consideration, modifying, changing or abandoning the old one. 13 C. J. 593. No such contract, however, is pleaded in this case, the complaint alleging that the oral contract relied on in the first cause of action was made "at the time of entering into" the written contract.

Even were it conceded that the complaint did set up a subsequent oral agreement, such latter contract as pleaded fails to state a cause of action. It consists, according to the complaint, of the written contract as modified by the two changes above set forth. This, of course, is a new contract. *Mahaffey* v. *Wisc. C. R. Co.,* 147 Ill. App. 43; *Braden* v. *Randles,* 128 Iowa 653, 105 N. W. 195; *Gray* v. *Bonnell,* 19 Cal. App. 243, 125 Pac. 355. A consideration, therefore, is as necessary for the new contract as it was for the original. *Main St. etc. Ry. Co.* v. *Los Angeles T. Co.;* 129 Cal. 301, 61 Pac. 937; *Little* v. *Rees,* 34 Minn. 277, 26 N. W. 7; *Capitol Food Co.* v. *Mode,* 112 Ark. 165, 165 S. W. 637; *Hanover Canal Co.* v. *Wilson,* 22 Wyo. 427, 143 Pac. 345. A party declaring on a contract which at common law does not import a consideration must fully and truly state the consideration in his complaint, as well as the contract. *Acheson* v.

*Western Union Tel. Co.,* 96 Cal. 641, 31 Pac. 583; *Felt* v. *Judd,* 3 Utah 414, 4 Pac. 243; *Sloan* v. *Mitchell,* 164 App. Div. 687, 149 N. Y. Supp. 1015; *Turnham* v. *Cal. etc. Min. Co.,* 58 Or. 453, 112 Pac. 711, 115 Pac. 157.

It is the almost universal rule that the promise of a person to carry out a subsisting contract with the promisee is no consideration for another contract, as the party is doing no more than he is already obliged to do. *Templin* v. *Hobson,* 10 Colo. App. 525, 51 Pac. 1019; *King* v. *Duluth etc. R. Co.,* 61 Minn. 482, 63 N. W. 1105; *Jones* v. *Risley,* 91 Tex. 1, 32 S. W. 1027; *Lewis* v. *McReavy,* 7 Wash. 294, 34 Pac. 832. The only thing plaintiff agreed to do in the new contract, according to the complaint, was to perform the work described in the written contract. This he was already obligated to do. No consideration being pleaded for the alleged oral contract, it was on its face void, and the first cause of action was bad for that reason, as well as for the one previously stated. We need not, therefore, consider the other assignments of error relating to the first cause of action, since it must go back for another trial, and the court will doubtless correctly deal with the situation as it then arises.

In passing on the second cause of action, we consider first the forty-seventh assignment, which is that the court erred in giving the following instruction to the jury:

"The court instructs the jury that it is admitted by the parties hereto that the plaintiff did work for the defendants under the written contract of April 19, 1926, during the month of August, 1926; that on or about the 1st day of September, 1926, the plaintiff presented to the defendants a bill, claiming that it covered such work. It is admitted in evidence also that said bill for August hauling, or any part thereof, was not paid, but it is claimed by the defendants that

they tendered the amount due on said bill by check on or about the 5th day of September, 1926.

"The court instructs the jury as a matter of law that said tender was a conditional one and therefore not the equivalent of payment under the contract, and that the plaintiff had thereupon a right to terminate the contract and to rescind the same, and is therefore entitled to recover from the defendants the reasonable value of the work done by it for which it has not been paid from and after July 24, 1926, to and including the 11th day of September, 1926."

This cause of action was based on the theory that, while it was admitted during the period covered therein plaintiff was working under the written contract above referred to, defendants breached the contract by failing to make payment for the work thus done, so that plaintiff on the eleventh day of September had the legal right to, and did, terminate the contract, and brought suit on a *quantum meruit* for the work performed during that period.

It is of course true that if, as a matter of fact, defendants failed to make the payments provided for by the contract, or a valid tender thereof, plaintiff had the right to terminate the contract, and, in suing for the value of the services already performed, *quantum meruit* was the proper form of action. *Greenlee County* v. *Cotey*, 17 Ariz. 542, 155 Pac. 302. Defendants contended, however, that they had repeatedly tendered to plaintiff in legal form the full amount due it. If this be true, they were not in default, and plaintiff's second cause of action, of course, would fail. That a tender in some form was made is not disputed. It is claimed, however, by plaintiff, that it was a conditional one, and therefore not valid.

The general rule of law, of course, is that a tender, in order to be valid, must be unconditional. 38 Cyc. 152. Is there any test we can use to determine whether a tender is conditional or not? When there is a *bona fide* dispute between a debtor and a cred-

itor as to the amount due, we think the true rule is well and succinctly stated in the case of *Moore* v. *Norman,* 52 Minn. 83, 38 Am. St. Rep. 526, 18 L. R. A. 359, 53 N. W. 809, in which the court says:

"The debtor has no right to the benefit of a tender, as having the effect of a payment, when it is burdened with such a condition *that the creditor cannot accept the money without compromising his legal right to recover the further sum which he claims to be due."* (Italics ours.)

The legal effect of a valid tender is to take the place of the necessity of proving payment of the sum tendered when such payment is a proper or necessary defense in an action. It cannot be used for any other purpose, and, if the tender is so made that its acceptance would be evidence, not only that such sum was paid, but that it was admitted to be the amount which should be paid to settle the controversy, the tender is not valid. This is but justice and common sense. It is not fair to say to the creditor: "By accepting what is admittedly your right, you may waive a further sum justly due you."

The question before us, therefore, is whether an acceptance by plaintiff of the check offered it by defendants on September 4th would have been admissible in evidence as tending to prove it admitted the amount due it for the work performed between April 19th and July 25th, was to be figured on the basis of the written contract. If it would have been admissible for that purpose, the offer was conditional; otherwise not. In determining this question we should consider all the evidence, written and oral, bearing upon the tender of September 4th. Briefly stated, it is as follows:

On July 20th, defendants mailed plaintiff a letter containing the following language:

"Herewith check in amount of $2,214.85 which we hand you to apply on our account. According to our

calculations this is the amount due you under your contract for hauling up to July 1st.

"Your statement does not give any weights and it is therefore difficult for us to check the same. This payment is based on calculations of weights and mileage in accordance with contract. Should there be any error in this remittance I will be glad to correct same immediately upon being advised of same,"

—and inclosing a check for $2,214.85. Immediately upon receipt, plaintiff answered as follows:

"Apparently a misunderstanding has developed as to what basis we are to be paid for the work we are doing in hauling materials from Marinette and vicinity to the so-called Frog Tanks dam. . . .

"Our subsequent conversation with you to-day has not materially changed the situation. . . . Immediately after the contract was signed you told the writer and Mr. Carr that we would have to work on a per day basis until such time as you were able to put the road in condition as per the blueprint shown us and referred to in the contract. We agreed to this agreement and it was on that basis that we made our charges for the work for April, May, June and so far in July."

Defendants replied to this as follows:

"We have your letter of July 20th reference hauling contract dated April 19th, between you and Mr. Jenkins and the undersigned. Our understanding at all times has been that you were hauling under that contract. Nothing else ever entered our heads. We therefore demand that you continue to operate under the contract and unload promptly the cars now at Marinette.

"No guaranty or representations have been made by us other than those set forth in the written contract which constitutes all the agreement between us, and which position the contract explicitly declares to be the understanding of all parties concerned."

The check was deposited by plaintiff before it received this last letter, but was not paid until the next day by the bank on which it was drawn, and could

have been recalled by plaintiff before payment. July 31st plaintiff wrote defendants, referring to the time of signing of the written contract:

"It was agreed at that time that we should haul on a day basis until such time as the road was put in shape. Although the road has not yet been built as agreed upon, nevertheless you may consider that we have commenced work under the written contract as of July 25th. . . . ".

August 5th defendants wrote plaintiff as follows:

"Herewith estimate and check for July hauling per contract of April 19th. Should there be any error in tonnage or mileage or extensions of the same kindly advise me and I will promptly correct same. This check is in full for hauling to date subject to such errors as above named which we will be glad to correct any time if same are found to have occurred.

"Answering your letter of August 3d I repeat that the only agreement or contract between us is the written contract of April 19, under which you have done all your hauling for us, and this check is tendered as a payment under the terms of said written contract, and pays for all hauling to date of August 1, less retained percentage of ten per cent, provided for in said contract. I bind myself, however, to correct any errors as stated in the first paragraph of this letter, should any such have occurred,"

—inclosing a check for $6,448.82. This check was returned August 10th by plaintiff in a letter reading in part as follows:

"We understand that you dispute our position regarding the written contract and as to when we should start the work thereunder. We have heretofore signified our willingness to work under the written contract from and after the 25th day of July, 1926. . . . "

August 12th defendants replied thus:

"Yours of August 10th is acknowledged and I inclose herewith again my check in the amount of $6,448.82 tendered in exact accordance with my letter

of August 5th for your more mature consideration. . . .

"Should I have made any error in computing the amount due you under the said written contract . . . I will correct such error as soon as same is called to my attention. It is not the intention or condition of this tender to bind either of us to any such error, but this check, as stated in my previous letter, is tendered as a payment on the written contract which is the only contract there has ever been between us."

On August 13th they received this answer from plaintiff:

"We cannot accept the check under the conditions outlined and are, therefore, herewith returning the same to you."

On September 4th defendants mailed plaintiff a check for $10,899.41, with this statement:

"Herewith check in amount of $10,899.41 in full of account to date. I arrive at this as follows:

| | |
|---|---:|
| Amount due you as per previous estimate and as per check on the Security National Bank of Tulsa, Okla., which you returned .............................. | $ 6,448 82 |
| Due on August bill per statement enclosed | 4,450 59 |
| Total ............................. | $10,899 41 |

"The $6,448.82 is tendered under the exact conditions of the previous tender of that same amount which you rejected last month.

"The $4,450.59 is tendered as additional payment of the same contract for amounts earned during August. Mileage and tonnage are subject to correction in case any error is discovered, but all payments are based on the contract of April 19, and are tendered as a payment on said contract."

Whereupon plaintiff answered:

"We are in receipt of your check for $10,899.41, tendered in full of account to date. We have written you twice in regard to this subject and specifically requested that the July and August accounts be paid separate from the disputed items.

"As you refuse, however, to pay us for the work done under the contract unless we at the same time settle the other controversies, we must, therefore, respectfully decline to accept the check and are herewith returning the same. Due to your failure to pay us as provided by the contract and on account of other difficulties we are having with you, we are, therefore, taking our trucks and men off the job Saturday evening of this week and ceasing all work for you."

This was the substance of the evidence introduced material to the issue of tender. In addition thereto, defendants made an offer to prove that in August, while the question of payments was under discussion, defendant Pleasant told plaintiff's representatives:

" . . . That he did not admit that there was any verbal contract whatsoever, and that he proposed to pay them under the written contract and would keep on tendering them payments under the written contract to apply on the written contract, as he had previously done, and that the representatives, or one of them, of the Arizona Storage & Distributing Company at that time insisted on payment under the alleged verbal contract also, and that Mr. Pleasant stated this, or this in substance; that he didn't admit any verbal contract, and that all the verbal statements that had been made between the parties had nothing to do with his written contract of April 19, 1926, but if they insisted that they had any rights under any claimed verbal contract, to hop to it, but that he was going to keep on paying them and tendering them payments under the written contract, and on the written contract, as the payments became due; . . . that, if the Arizona Storage & Distributing Company could make anybody believe that they had a verbal contract with him (Pleasant) on that hauling, he was willing to quit business, and that he didn't care if they brought suit against him on that item, that he could beat it."

For the purpose of determining whether the tender was valid, we will assume that such oral statement was also in evidence. Would all this evidence, taken

together, show a conditional or an unconditional tender? It seems to us a fair test would be the following: If plaintiff had accepted the check of September 4th after the exchange of the various letters above quoted and the statement of defendant Pleasant, when issue was joined on the question of whether or not it was working under a written or oral contract between April 19th and July 25th, would plaintiff have been entitled to an instruction, in substance, as follows:

"In determining whether or not plaintiff was working between April 19th and July 25th under the written or the alleged oral contract, you cannot consider the various letters and conversations leading up to the tender of September 4th, and the acceptance of such tender by plaintiff, as in any way bearing on such question."

We are of the opinion such an instruction would have been clear and material error. Under all the circumstances surrounding the tender, defendants would certainly have a right to insist that these circumstances and the acceptance of the check thereunder be considered by the jury as bearing on the question whether or not plaintiff was ever working under an oral contract. As a matter of fact, defendants insisted on the trial that the acceptance of the check inclosed in the letter of July 20th, even though stated to be paid "on account," went so far as to be, not merely evidence that the work prior to that date was done under the written contract, but an estoppel against any reliance by plaintiff on an oral agreement, because, after the deposit of the check for collection, but before it was paid, plaintiff learned that defendants insisted all work had been done under the written contract. While the court refused, and we think correctly, to hold that acceptance of the check under those circumstances acted as an estoppel against plaintiff, it could not have refused to let such

acceptance go to the jury as evidence on the issue, and, if this be true of an acceptance of a payment under such circumstances, how much more would it have been true if plaintiff had accepted the tender of September 4th.

Counsel have cited a few American and English cases holding that under some circumstances the question of whether a tender is conditional should be submitted to the jury, but these same cases hold that the issue at times is one of law for the court,. and we think for the reasons indicated above it is so in this case. The instruction complained of, under the evidence admitted, and that offered but rejected on this point, was correct. Counsel for defendants urge that the rule as to a conditional tender applies only when the controversy as to the amount due is *bona fide,* and that the jury should have had the question of the *bona fides* of the plaintiff in its claim of an oral contract submitted to them. But nowhere in the pleadings or assignments of error does it appear that the issue of *bona fides* was raised in the trial court, and. it is too late to raise it on appeal. This disposes of the assignments of error affecting the second cause of action.

We consider next the question of counterclaims. Since, as we have stated, plaintiff had a right to cease work on September 11th because defendants had neither paid nor made a valid tender of payment of the amounts admittedly due under the written contract of September 1st, the court properly withdrew from the jury the sixth counterclaim. If plaintiff had a right to cease work for nonpayment, it is not liable for any expenses to which defendants were thereafter put in finishing the job. So far as the other five counterclaims are concerned, a single verdict was submitted to the jury, which found in favor of defendants in the lump sum of $250. We have examined the evidence in the abstract of record so far as

cited by defendants, and on no reasonable theory of that evidence could such a verdict on the counterclaims or any one of them be sustained. Plaintiff, in answering the assignments of error on this point, has confined itself to a general statement in its brief that there is evidence to sustain this verdict, without pointing it out to us. We must hold, therefore, that the verdict, so far as the counterclaims are concerned, is not sustained by the evidence. Objection was also made by defendants that the court, in instructing the jury as to several of the counterclaims, struck out from the instructions submitted by them the phrases, "at the special instance or request of plaintiff," and added to those instructions the words, "that plaintiff impliedly agreed to pay for the same." When work and labor is performed for, or goods furnished to, another at the latter's instance and request, the law implies a promise to pay for the same, and it is not necessary that any such promise be proved. The instructions as submitted by defendants correctly stated the law. It is perhaps true that the phrase added by the court has the same legal meaning as that struck out by it. We think, however, the phrase struck out was more likely to give the jury a correct understanding of the law than the one added. Since it is necessary that the issues as to the five counterclaims be tried again on account of the failure of the evidence to sustain the verdict, we suggest that, if the same instructions be again asked for on the same evidence, it would be better to give them as asked.

It appears from the foregoing that the verdicts on the first cause of action and the counterclaims cannot be upheld, but that the one on the second cause of action was not improper on the issues as framed and the evidence adduced. It is ordered that the judgment of the superior court of Maricopa county be reversed, and the case remanded, with instructions to sustain the demurrer to plaintiff's first cause of

action, and to grant a new trial as to the first five of defendants' counterclaims, and for such further action as may be advisable in view of the opinion expressed herein.

ROSS, C. J., and McALISTER, J., concur.