272 P.2d 345

**OWENS v. CONELLY.**

No. 5821.

Supreme Court of Arizona.

June 29, 1954.

Rehearing Denied Sept. 21, 1954.

Fickett & Dunipace, and Robert D. Stauffer, Tucson, for appellant.

E. T. Cusick, Tucson, Francis J. Ryley and George R. Carlock, Phoenix, for appellee.

STANFORD, Justice.

This action was brought by appellee Conelly against appellant Owens for the payment of a promissory note with interest and attorney's fees. The case was tried before the court without a jury.

The note was dated January 20, 1951, and was for the principal sum of $8,500, carrying interest at six per cent per annum and ten per cent attorney's fees. The record shows that previously Owens and Conelly entered into an agreement evidenced by a letter which reads as follows:

"Dec. 20, 1950
"Mr. W. F. Conelly
"415 E. Speedway
"Tucson, Ariz.
"Dear Mr. Conelly:

"Confirming our agreement in which you agree to loan me the sum of Eight Thousand Five Hundred ($8500.00) Dollars for a period of time not in excess of One Year from date, I hereby agree as follows:

"The use of this money enables me to carry on development and operational progress at the Abril Mine, Dragoon Mining District, Cochise County, Arizona, which same is owned in fee by Shattuck-Denn Mining Corporation and leased to me on usual ten percent royalty mining contract for a period of five years.

"I do, therefore, hereby covenant and agree that I will pay to you as interest on the said above mentioned loan, the sum of twelve and one half (12½%) percent of the net profits derived from the operation of the Abril Mine by me.

"In the event of a sale on the Abril Mine, you will receive the same stated proportion of all net profits realized from the sale of the property.

"If this is your understanding of our agreement, please sign and return the enclosed copy and this letter will evidence our agreement.

"Yours very truly,
"Sherwood B. Owens
"Accepted:
"W. F. Conelly"

As we view this agreement, Conelly agreed to loan $8,500 in the Abril mine, in return for one-eighth of the profits resulting from the operation or sale thereof during the term of Owens' lease, the $8,500 to be returned within one year. The $8,500 was advanced during January and February, 1950. The record further shows that up to the month of May, 1952, the lender had received no payment on the principal, nor had there been any net profits from the operation of the mine, and no sale thereof was made. On May 20, 1952, Owens willingly gave the note here sued upon, and the letter contract dated December 20, 1950, was returned to and accepted by him.

At trial, Owens' defense was that there was no consideration for the execution of the note, that it was usurious, and that Conelly, even if entitled to recover his prin-

cipal, could not recover interest or attorney's fees. The trial court made findings of fact and conclusions of law and rendered judgment in favor of Conelly for the principal sum of $8,500, with interest at the rate of six per cent per annum from January 20, 1951, to date of judgment in the amount of $1,147.50, and for attorney's fees in the sum of $964.75.

From the judgment and from the denial of the motion for a new trial appellant Owens has taken his appeal and has made some 29 assignments of error. We need consider only three thereof:

"I.

"The Court erred in entering judgment for Conelly because there was no consideration for the note sued upon.

"II.

"The Court erred in including in the judgment any recovery for interest because the note was usurious.

"III.

"The Court erred in including in the judgment any recovery for attorney's fees because:

"a. There is no evidence in the case as to the value of the attorney's fees rendered;

"b. The provision in the note for a fixed fee is void and against public policy;

"c. Since the note is usurious, Conelly is barred from recovering attorney's fees."

■ The first assignment is clarified by appellant's first proposition of law, namely:

"The promise of a person to carry out a subsisting contract with the promissee is no consideration for another contract."

Supporting this, appellant quotes from the case of Dover Copper Mining Co. v. Doenges, 40 Ariz. 349, 356, 12 P.2d 288, 291, as follows:

"We have held in the case of Pleasant v. Arizona Storage & Distributing Co., supra [34 Ariz. 68, 267 P. 794], as follows: 'It is the almost universal rule *that the promise of a person to carry out a subsisting contract with the promissee is no consideration for another contract,* as the party is doing no more than he is already obliged to do. (Citing cases.) The only thing plaintiff agreed to do in the new contract, according to the complaint, was to perform the work described in the written contract. This he was already obligated to do. No consideration being pleaded for the alleged oral contract, it was on its face void, and the first cause of action was bad for that reason, as well as for the one previously stated' * * *."

We consider this case not in point, as the testimony shows that at the time the note in question was given the letter contract referred to was returned to Owens by the attorney for Conelly. Conelly surrendered to Owens his legal rights under the letter

agreement and received in return simple interest on the money advanced from the date of the original transaction. It is apparent that Owens was relieved of the legal duty to perform under the terms of the letter agreement and took instead the legal duty to perform under the terms of the note, and the release of the obligation to perform the one legal duty furnishes the consideration for the undertaking to perform the other legal duty.

As to Assignment No. 2, appellant advances an interesting legal theory. He points out that the lender, Conelly, had the *legal right* to receive 12½% of the net profits of the operation of the Abril mine for the period January, 1951, to May, 1952. Owens contends that Conelly did receive interest on the money loaned (that interest consisting in the legal right to receive profits) and that the right was by its nature speculative (in this case it so happening that no profits accrued). Owens contends that having received this interest for the period January, 1951, to May, 1952, it is a violation of our usury statute for Conelly to receive in addition thereto the six per cent agreed upon in the note.

Appellee cites us to a note in 42 Cal.L.R. 198, "Usury Laws: Loans for a Share of the Profits", wherein is discussed the problem of lending money to finance a sole proprietorship or a partnership, the lender receiving a share in the profits of the business in lieu of interest. After examining the cases and text authorities the author concludes such a transaction is a desirable business practice and is not usurious because there is a contingency that the "interest" will never be paid, subject to the qualification that there must be no corrupt intent to use the device as a cloak for usury.

We are further cited to the annotations, "Usury–Waiver–Renewal", found in 13 A.L.R. 1213, 1220–1226, pt. VII, and 74 A.L.R. 1184, 1187–1188, pt. VII, wherein dozens of authorities are cited in support of the proposition that though a contract be tainted with usury, the abandonment thereof and the execution of a new obligation for the amount of the actual debt, free from the usury, and bearing only lawful interest, purges the transaction of usury and makes the second obligation valid and enforceable. In the case at bar the original transaction was not usurious, a fortiori the parties ought to be able to rescind the old agreement and substitute a new one bearing interest from the date of the original loan.

Appellant objects that in a certain sense the old agreement cannot be abandoned, because Conelly for over a year had the right to receive a share of the profits and by its nature this right cannot be returned, and thus the result is that for the period January, 1951, to May, 1952, Conelly is receiving two things in return for the use of the money loaned, (a) the right to speculate on the profits of the mine, that is, the right to 12½% of the profits, if any, accruing from its operation, and (b) six

per cent of the principal amount per annum. We realize such an argument is plausible, because in the ordinary case back-dating a note and computing the interest on a false basis constitutes usury, still this case must be distinguished. Conelly was entitled to have his money back and entitled to retain his right to the future profits from the mine. Instead, he gave up this latter valuable right and took simple interest on his money from the date he loaned it. In effect, Owens recovered a one-eighth share in the Abril mine and paid therefor simple interest on $8,500 for the period January 20, 1951, to May 20, 1952.

Moreover, on this matter of usury we deem it well to refer to our opinion in Blaisdell v. Steinfeld, 15 Ariz. 155, 186, 137 P. 555, 568, wherein we defined usury as follows:

"'In deciding whether any given transaction is usurious or not, the courts will disregard the form which it may take and look only to the substance of the transaction in order to determine whether all the requisites of usury are present. These requisites are: (1) An unlawful intent; (2) the subject-matter must be money or money's equivalent; (3) a loan or forbearance; (4) the sum loaned must be absolutely, not contingently, repayable; and (5) there must be an exaction for the use of the loan of something in excess of what is allowed by law. If all these requisites are found to be present, the transaction will be condemned as usurious, whatever form it may assume, and despite any disguise it may wear. But, if any one of these requisites is lacking, the transaction is not usurious, although it may bear the outward marks of usury.'"

This definition was recently adhered to in Seargeant v. Smith, 63 Ariz. 466, 468–469, 163 P.2d 680, 681. An examination of the record in the case at bar reveals that the necessary element of unlawful intent was clearly lacking.

The $8,500 was advanced in installments as follows: $2,500 on January 4, 1951; $3,000 on January 20, 1951; $1,500 on February 3, 1951; and $1,500 on February 10, 1951. The money having been agreed to be repaid in one year, and not having been paid when due, after many talks with Owens about it, Conelly placed the matter of its collection in the hands of his attorney, Honorable Richard H. Chambers, of Tucson. Mr. Chambers wrote Owens to come to his office, and when he came he secured the note and surrendered to Owens the letter contract dated December 20, 1950. As to this Chambers testified:

"* * * I suggested that date of the letter, December 20, 1950, and Mr. Owens brought up something about, well, he got the money in installments from then on. I then asked him, well, 'Do you think we could figure an average date as to when you got the mon-

ey? Would you say that by January 20th that you had half of the money?', and as I recall it he said 'Oh, by that date I had more than half of it.' * * * "

The lender's intent was to collect 6% interest (less than the lawful rate of 8%) on the money loaned for the entire period during which the borrower had the use of the money, and to collect no more than this. We believe this falls far short of an unlawful intent.

By Assignment No. 3 it is claimed that the note is usurious because it contains this clause:

"In case counsel is employed I agree to pay as counsel fees an amount equal to 10% of the amount found to be due at the date of collection."

From Maxey v. Somerton State Bank, 22 Ariz. 371, 374, 197 P. 894, 895, we quote:

"The clear language of the second sentence of the agreement is that the attorney's fees are to be fixed by the judge of the court, but it is not specified that they are to be so fixed at all events; *in other words, it does not say that the parties themselves may not agree upon the amount of the attorney's fees. Of course the parties themselves may always agree if they can.*" (Emphasis supplied.)

We quote from Citizens Nat. Bank of Orange, Va. v. Waugh, 78 F.2d 325, 329, 100 A.L.R. 939:

"We come, then, to the question as to whether the provision for a 10 per cent. attorney's fee for collection in case of default in the payment of a promissory note is to be condemned as contrary to the policy of the law; and we think that this question, nothing else appearing, must be answered in the negative. Of course, if it should appear that a particular provision were used as a mere cloak for usury or that the provision were for so large an amount or were of such a character as *to show an intention to provide a* mere penalty for nonpayment, a different question would be presented, and it might well be condemned as in conflict with the well-settled policy of the law. But, where the provision is reasonable in amount and legal services are required and are actually rendered in the collection of the instrument, we can think of no consideration of public policy which should condemn it. * * * "

From paragraph VII of the Findings of Fact, we quote these lines:

"There was no intent on the part of the plaintiff to set up a device to evade the usury laws of the State of Arizona, but the plaintiff on and after May 20, 1952 did intend to collect interest at the rate of 6% per annum from the time he advanced the money to the defendant."

Accordingly, we see no merit to the third assignment of error. While we realize the

extensive work given this appeal by attorneys for appellant, we feel that all of the essential matters have been covered and hence there is no occasion to consider the rest of the assignments of error.

Judgment affirmed.

PHELPS, C. J., and LA PRADE, UDALL and WINDES, JJ., concur.