485 P.2d 1177

Charles W. COPELAND and Gerry S. Copeland, his wife, Appellants,

v.

C. Saxby ANDERSON, Jr., a single man, Appellee.

No. 1 CA–CIV 1341.

Court of Appeals of Arizona, Division 1.

June 17, 1971.

Robbins & Francone by Merrill W. Robbins, Phoenix, for appellants.

Herbert Mallamo, Phoenix, for appellee.

HOWARD, Judge.

This is an action by the assignees of a promissory note and realty mortgage of

Lot 19, Block 2, Harmont Manor, Maricopa County, Arizona, to foreclose the mortgage.

Anderson, the appellee and the defendant below, contended in the trial court that the transaction involved was usurious. The trial court, sitting without a jury, agreed with Anderson and entered judgment in his favor.

The facts necessary to dispose of this case considered in the light most favorable to affirming the trial court are as follows: In the month of November, 1961, Anderson contacted an independent loan broker, O'Brien Investment Company, for the purpose of obtaining a loan. The sum of $7,000 was eventually loaned to Anderson by one Margaret V. Bargman. The loan was evidenced by two separate promissory notes in the sum of $3,500 each and secured by mortgages on the real estate belonging to Anderson. One of the notes had already been paid and we are concerned only with the remaining $3,500 note.

■ Although the note in question bears interest from November 24, 1961, the uncontradicted evidence is that the transaction was not consummated until December 19, 1961. The evidence is further undisputed that Mrs. Bargman did not give the funds to O'Brien Investment Company, acting as escrow, until the latter date of December 19, 1961.

In the trial court, Anderson advanced several reasons why the transaction in question was usurious. We, however, do not find it necessary to discuss his several theories since we find one reason which is most compelling. The rule in Arizona is that where the obligation for the repayment of money, bearing interest from its date, antedates the actual transfer and receipt of the money lent, the contract is usurious if such antedating is adopted as a device for hiding a usurious contract. Owens v. Conelly, 77 Ariz. 349, 272 P.2d 345 (1954).

One of the requisites of usury is an unlawful intent. Seargeant v. Smith, 63 Ariz. 466, 163 P.2d 680 (1945); Blaisdell v. Steinfeld, 15 Ariz. 155, 137 P. 555 (1914). We have searched the record and have been unable to find any reason given for the backdating of the note. The intent required to constitute usury is not necessarily a consciousness of the illegality of the transaction. As was stated in Blaisdell v. Steinfeld, supra:

"The 'unlawful intent' referred to is presumed 'from the mere fact of intentionally doing what is forbidden by statute. It is not necessary that the parties shall know that in so doing they are violating the law.' 39 Cyc. 920." 137 P. 555, at 568.

Under the circumstances presented to the trial court, it was justified in concluding that the antedating of the note extracted usurious interest.

■ Our inquiry is not ended since appellants contend that even if the contract was usurious, appellants were holders in due course entitled to the benefits of A.R.S. Sec. 44–457 which read:

"A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." [1]

We find the appellants in this case, one of whom was the secretary in O'Brien Investment Company who prepared the notes and mortgages, are mistaken in this contention. In order to constitute a holder in due course, one must be a holder before the instrument is overdue. A.R.S. Sec. 44–452; Britton on Bills Notes, 2d, at 301. The requirement of A.R.S. Sec. 44–452 that before a person can become a holder in due course, he must become a holder of the note before it was overdue, is a codification of the common law rule. The rationale of the common law rule is well

---

1. This transaction occurred prior to Arizona adopting the Uniform Commercial Code.

stated in Fisher v. Leland, 4 Cush. (Mass.) 456, 50 Am.Dec. 805 (1849) wherein the court stated:

"Where a negotiable note is found in circulation after it is due, it carries suspicion on the face of it. The question instantly arises, why is it in circulation, —why is it not paid? Here is something wrong. Therefore, although it does not give the indorser (indorsee) notice of any specific matter of defense such as set-off, payment, or fraudulent acquisition, yet it puts him on inquiry; he takes only such title as the indorser himself had, and subject to any defense which would be made if the suit were brought by the indorser."

The note in question shows a maturity date of May 24, 1967. Appellants did not purchase the note until March 7, 1969 almost two years after the maturity date and thus are not holders in due course.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. Sec. 12–120(E).